### 9946

WILLIAMS *ET AL.* v. HOTEL MELROSE *ET AL.*

(96 S. E. 407.)

1. MECHANICS' LIENS—RIGHT TO LIEN—STATUTE.—Under Civ. Code 1,912, sec. 4113, *et seq.,* giving a lien on buildings and land to any person to whom a debt is due for labor performed or material furnished, the instant the labor or material is furnished the lien is created between the parties.

2. MORTGAGES—RECORD—PRIORITY.—Under Civ. Code 1912, sec. 4117, as to filing lien statement, and sec. 3542, as to record as notice, a statutory lien does not affect mortgage liens acquired by third persons without notice and for a valuable consideration subsequent to the statutory lien, unless statement of the lien has been recorded before the mortgage liens took effect.

3. MORTGAGES—PRIORITY—MORTGAGE PROVISIONS.—A mortgagor's covenant that it would not create or suffer any mechanics' liens, etc.,

1—110.

whereby the lien of the mortgage might be impaired until the notes secured should be paid, was not evidence that the mortgage creditors had constructive notice of mechanics' liens.

4. MECHANICS' LIENS — RIGHT TO LIEN — STATUTE — "FURNISHED" — "LABOR."—Under Civ. Code 1912, sec. 4113, *et seq.*, providing that any one to whom a debt is due for labor "performed or furnished" in the erection, alteration, or repair of any building or structure upon any realty, by virtue of an agreement with the owner, etc., shall have a lien on such building and land, an architect who furnished the building plans and supervised the construction, and one who supervised the purchase of material and the employment of laborers, had a lien, as they furnished "labor," for the word "furnished" is not synonymous with "performed," and the statute was not intended to protect only those working with their hands.

5. MECHANICS' LIENS—RIGHT TO LIEN—STATUTE.—Statutory liens may not be extended by the Courts to include the claims of persons not specified by the statute, and one setting up such a lien must bring himself fairly within the expressed intention of the lawmakers.

6. MECHANICS' LIENS—RIGHT TO LIEN—RAILROAD MILEAGE.—Under Civ. Code 1912, sec. 4113, *et seq.*, giving liens on lands and buildings for labor and materials, no lien could be had for items of expenses for railroad mileage, for the rental of an engine, and for freight.

Before SPAIN, J., Darlington, at chambers, February 23, 1917. Reversed in part and affirmed in part.

Action by Bright Williamson and others, as trustees, to foreclose a mortgage on realty against Hotel Melrose, the Perkins Manufacturing Company, and others, lien claimants. Decree for defendants, and plaintiffs appeal.

The following exceptions were taken:

Exceptions of defendant, J. M. Lawton:

"J. M. Lawton duly served notice of intention to appeal to the Supreme Court from the decree herein, and now appeals upon the following exceptions:

"(1) Because his Honor erred in holding that the item of $250 for extra services, the item of $140.84 paid out for labor, the item of $107.84 for materials furnished, were for services rendered and materials furnished under an independent contract subsequent to the execution and recording of the mortgage; whereas, he should have held that all of

said items were comprehended in the contract of January 7, 1914, and the modifications thereof, therein provided for.

"(2) Because his Honor erred in finding that any services were rendered or any materials furnished under an independent contract; whereas, there was but one contract with J. M. Lawton, to wit, the contract of January 7, 1914, which in the first article thereof expressly provided for modifications and alterations in the plans of the architect to be made from time to time by the owner and the architect, it being admitted that said plans were frequently changed and that the building cost greatly in excess of the amount contemplated at the outset.

"(3) Because his Honor erred in disallowing the item of $15 expense trip to Augusta, the item of $120 rent of hoist engine, and the item of 62 cents freight; whereas, he should have held that each of said items was contemplated by the contract, was authorized by Hotel Melrose, and was a necessary and proper expenditure.

"(4) Because, having found that Mr. Lawton was entitled to every penny of his claim in justice and morals, that it was admitted his services were faithful and efficient, and that thereby the cost of the building was measurably lessened, that when the credit of Hotel Melrose was exhausted before the completion of the building he paid for the materials necessary for the completion out of his own funds, his Honor erred in holding that he was bound by the narrow limitations of the contract and the statute; whereas, he should have held that the entire claim of $901.45 was for services rendered and material furnished pursuant to the contract of January 7, 1914, and the modifications thereof, and that for said claim J. M. Lawton had a lien paramount to the mortgage."

Exceptions of the plaintiffs. Bright Williamson, C. B. Edwards and W. M. Haysworth, trustees:

"The plaintiffs, Bright Williamson, C. B. Edwards and W. M. Haynsworth, trustees, appeal to the Supreme Court from the foregoing decree on the following grounds:

"(1) Because his Honor erred in holding that the mechanics' liens of the defendants, Perkins Manufacturing Company, H. W. Witcover, J. M. Lawton, Otis Elevator Company, and Bryce & Haynsworth, are prior and superior in rank to the lien of plaintiffs' mortgage, although it is admitted that the said mortgage was duly executed, delivered, and recorded, as required by law, long prior to the delivery to the clerk of Court by the said defendants, or any of them, of the statements required by section 4117 of volume I of the Code of Laws of South Carolina 1912, to be filed and recorded in the office of the clerk of Court of the county where property sought to be affected by a mechanic's lien is situated, and long prior to the filing and recording of any lien, or claim of lien, or of any contract, statement, or evidence of indebtedness which might then or thereafter constitute a lien upon the mortgaged premises.

"(2) Because his Honor erred in holding that the mechanic's lien of the said defendants, Perkins Manufacturing Company, H. W. Witcover, J. M. Lawton, Otis Elevator Company and Bryce & Haynsworth, are prior and superior in rank to the lien of the plaintiffs' mortgage, although it is clearly shown by the undisputed evidence that the mortgagees, at the time of the execution and delivery of the said mortgage to them, had no notice whatever, either actual or constructive, of the existence of any lien or liens, or of any contracts or indebtedness whatever which might then or thereafter constitute a lien or liens upon the mortgaged premises.

"(3) Because his Honor should have held that the lien of the mortgage of the trustees was superior and paramount to any and all other liens which were set up and claimed herein, and should accordingly have sustained the plaintiffs' contention that the proceeds of sale of said property be first applied to the indebtedness due upon their said mortgage.

"(4) Because his Honor should have held, in conformity with the facts as established in this case, that the contract

upon which the lien claimants herein base their claims were divisible contracts, especially the contracts of the Perkins Manufacturing Company, in that it appears that separate invoices were delivered to the Hotel Melrose for each and every shipment made, and that payment for each and every invoice was made at the time of delivery or soon thereafter, and that nothing was owing or due upon said divisible contracts at the time of the execution of the plaintiffs' mortgage, which it is submitted constitutes a prior lien upon the mortgaged premises of the Hotel Melrose as against liens claimed by any and all other parties herein.

"(5) Because his Honor erred in holding that Hyman W. Witcover, the architect, has a lien upon the property of the Hotel Melrose for the amount due him by the said Hotel Melrose for services rendered by him in the erection of the building on its property, although the evidence clearly shows, and it is admitted, that the said Hyman W. Witcover did not perform or furnish any labor or furnish any materials in the erection of said building, but only prepared plans and specifications therefor and supervised the construction thereof.

"(6) Because his honor erred in holding that the defendant, J. M. Lawton, the superintendent of construction, has a lien upon the property of Hotel Melrose to secure the amount due him for services rendered in the erection of a building on its property, although the evidence clearly shows, and it is admitted, that the said J. M. Lawton did not perform or furnish any labor or furnish any materials in the erection of said building pursuant to any contract or agreement with Hotel Melrose, but that he only contracted for labor and materials as agent for said Hotel Melrose, and superintended the construction of the building."

The amendment of 1882 (Gen. St. 1882, sec. 2354) was as follows:

"Sec. 2354. Such lien shall be dissolved, unless the person desiring to avail himself thereof, within ninety days

after he ceases to labor on or furnish labor or materials for such building or structure, files in the office of the clerk of Court of Common Pleas of the county in which the same is situated a statement of a just and true account of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien, sufficiently accurate for identification, with the name of the owner or owners of the property, if known, which certificate shall be subscribed and sworn to by the person claiming the lien, or by some one in his behalf, and shall be recorded in a book kept for the purpose by the clerk, who shall be entitled to the same fees therefor as for recording mortgages of equal length: *Provided,* That said lien shall not be valid to affect the rights of subsequent creditors, or purchasers for valuable consideration without notice, unless the statement be recorded within 40 days from the time of delivery to the clerk."

The amendment to Gen. St. 1882, sec. 2354, by act December 24, 1884 (18 St. at Large, p. 822), sec. 1, was as follows:

"Sec. 2354. Such liens shall be dissolved, unless the person desiring to avail himself thereof, within ninety days after he ceases to labor on or furnish labor or materials for such building or structure, files in the office of the register of mesne conveyance of the county in which the same is situated a statement of a just and true account of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien, sufficiently accurate for identification, with the name of the owner or owners of the property, if known; which certificate shall be subscribed and sworn to by the person claiming the lien, or by some one in his behalf, and shall be recorded in a book kept for the purpose by the register, who shall be entitled to the same fees therefor as for recording mortgages of equal length. The delivery to the register for filing, as hereinbefore provided, shall be and constitute the delivery

contemplated with regard to such liens in section 1776 of the General Statutes."

The decree of the Circuit Court is as follows:

In 1913 a corporation was duly organized under the laws of this State, called Hotel Melrose, for the purpose of erecting, owning and operating a hotel at Darlington. A site for the hotel building was purchased (to which more specific reference will hereinafter be made), and in July, 1913, Mr. H. W. Witcover, of Savannah, Ga., was employed by Hotel Melrose to furnish plans and specifications for, and to supervise the erection of, the proposed hotel building; and on January 7, 1914, the plans and specifications having been prepared, Mr. J. M. Lawton was employed to superintend the erection of the building. There was no written contract between the corporation and the architect, but there was a written contract between the corporation and Mr. Lawton, by the terms whereof he was authorized to place all orders for material, to employ labor, and, generally, to represent the owner in the construction of this building, and for his services was to receive the sum of $3,500. Work on the building was begun early in 1914, and continued throughout that year, and until the completion of the building in 1915. Many contracts were necessarily made with divers persons for materials to be furnished and labor to be performed, and the names of the contractors, and the dates and terms of the contracts, affected by this decree, are hereinafter specifically set forth.

.On July 1, 1914, in order to obtain funds to be used in the erection of the hotel building, Hotel Melrose executed to the plaintiffs in this action, as trustees, a mortgage, covering that portion of the hotel site upon which the building was erected, to secure an issue of $35,000 of notes.

Towards the completion of said building and afterwards Hotel Melrose was unable to pay part of its contractual indebtedness for labor performed or furnished, and for

materials furnished and actually used, in the erection of said building, and several persons who had so furnished materials and performed labor duly filed in the office of the clerk of Court of Darlington county, during the year 1915, statements of their respective accounts, under the provisions of the Mechanic's Lien Statute of this State, and thereafter commenced action for the foreclosure of their alleged liens upon the lots and building of Hotel Melrose. Subsequently, the condition of the aforesaid mortgage having been broken, this action was brought by the trustees against Hotel Melrose and the several lien claimants for the foreclosure of the said mortgage.

On April 10, 1916, an order, consented to by the plaintiffs and all of the defendants, was made by his Honor, Judge Shipp, consolidating to be heard as one the action for the foreclosure of the mortgage and the several actions for the foreclosure of said liens, and referring the same to Hon. Robert Macfarlan, Judge of probate of Darlington county, to take testimony upon the issues involved and to report the same to this Court.

Upon the testimony so taken, and by consent of counsel for all parties, these cases have been heard by me at chambers. The principal questions before me for determination are: First, are the several lien claimants entitled to liens upon the hotel property; and, if so, second, is the mortgage which plaintiffs seek to foreclose prior and superior in rank to the said liens claimed under contracts executed before the execution and recording of said mortgage, and performed partly before and partly after the execution and recording of said mortgage? I will discuss these questions in reverse order.

The lien claimants contend that their liens relate to the dates of the contracts under which labor was performed or materials furnished, and that, therefore, they are prior in rank to the mortgage. The plaintiffs herein contend that under the Recording Act (Code of Laws S. C. 1912, vol. I,

sec. 3542), requiring the recordation of certain instruments affecting titles to land, among them "all statutory liens on buildings and lands for materials or labor furnished on them," within ten days from their execution or delivery, so as to render them effectual against subsequent creditors or purchasers for value without notice, construed in connection with the provision of the Mechanic's Lien Statute (Code of Laws S. C., sec. 4117), requiring the filing and recording of the statement of account under which a lien is claimed, a mechanic's lien cannot attach until such statement has actually been filed and recorded; and that, therefore, the lien of the mortgage, which was admittedly executed and recorded before the building was completed, and before any such statements of account were filed and recorded by any of the lien claimants, is prior and superior to all of the alleged liens.

Much of the difficulty encountered in properly construing these two loosely constructed and apparently somewhat inconsistent and inharmonious statutes disappears when the distinction between the lien itself and the remedies provided for its enforcement is clearly drawn. The lien is created by statute, is invisible, inchoate, and intangible, and may be defined to be a hold or claim which one person has upon the property of another as a security for some debt or charge. It is not the result of any form of expression, but the name given to a right, and that which creates the right produces the lien. Under section 4113 of the Code it is provided that any person to whom a debt is due for labor performed or furnished, or for materials furnished, and actually used in the erection of any building, by virtue of an agreement with the owner of such building, shall have a lien thereon for such labor or materials. "Two things must concur," said Mr. Justice McIver, in *Geddes v. Bowden,* 19 S. C. 1, to entitle a person to the lien provided for in our statute: "First, there must be a debt due to the person claiming the lien 'for labor performed' or furnished, or for materials furnished and actually used, in the construction of the build-

ing upon which the lien is claimed; second, such labor must be performed or materials furnished by virtue of an agreement with, or by consent of, the owner of such building or structure, or any person having authority from, or rightfully acting for, such owner in procuring or furnishing such labor or materials." Section 4117 of the Code provides the remedy for the enforcement of the lien and sets forth in detail the steps which must be taken by one claiming such a lien. In the case at bar it is admitted that contracts or agreements were made between the owner, *i. e.,* Hotel Melrose, and the lien claimants for labor to be performed or materials to be furnished, that such labor was performed or materials furnished pursuant to such contracts or agreements, and that the debts therefor are due. The debt becomes due or owing in the sense in which this word is used in section 4113 as soon as any labor has been performed or any materials furnished pursuant to a proper agreement. It is brought into existence by statute, relates to the date of the contract, and continues until extinguished by payment, dissolved by the limitation of the statute, or consummated when the lien claimant takes the steps required by law, namely, filing a proper statement of account within 90 days after performing or furnishing the last item of labor or materials, and commencing action for foreclosure of his lien within six months after such time. This is evident from the initial words of section 4117—"such lien shall be dissolved unless," etc.

Our present Mechanic's Lien Statute was enacted in 1869. The Recording Act was enacted in 1876. The last sentence in section 4117, which was added to bring the Mechanic's Lien Statute into harmony with the Recording Act, is the result of an amendment made in 1884. This amendment simply provides that the delivery to the register or clerk for filing of the statement of account referred to in the preceding part of said section 4117 shall be and constitute the delivery contemplated with regard to such liens under the

Recording Act. The delivery to, or filing with, the clerk
or register of such statement of account by the lien claim-
ant consummates the lien and fixes the rights of the lien
claimant so far as the owner of the property is concerned,
whether the same be recorded or not, just as in the case of a
deed or mortgage; while the recording of such statement of
account and claim of lien is that which is necessary to pro-
tect the rights of such lien claimant against those who
become creditors of, or purchasers for value without notice
from, the owner of the property, subsequent to the delivery
of the statement of account to the clerk or register.

There are two cases decided by our own Supreme Court
which throw considerable light on this question, if they do
not practically decide it. It is evident that when the words,
"all statutory liens on buildings and lands for materials or
labor furnished on them," were incorporated into the
Recording Act careful consideration had not been given to
their meaning or effect. Certainly the invisible and intan-
gible statutory lien itself, incapable of being either "executed
or delivered," could not be recorded. One of the conten-
tions of counsel for the trustees under the mortgage is that
the effect of including the words above quoted in the Record-
ing Act was to so amend the Mechanic's Lien Statute as to
require the contract or agreement between the property
owner and the laborer or materialman, out of which the
lien springs, to be reduced to writing, executed with the
same formality as a deed or mortgage, and recorded within
the period prescribed by the Recording Act, in order to ren-
der the lien which might thereafter be claimed under such
agreement effectual against those becoming creditors of, or
purchasers for value without notice from, the property
owner subsequent to the date of the contract. To this prop-
osition I cannot assent, for it seems to me unwarrantable to
stretch the doctrine of amendment by implication to this
length. However, even if the enactment of the Recording
Act did have this effect, such has not been the case since the

adoption by the legislature of the amendment of the Mechanic's Lien Statute in 1884, which, as we have seen, specifically made the delivery for filing to the clerk or register, not of the lien itself, but of the statement of account (as already required to be done by the Mechanic's Lien Statute), the delivery contemplated by the Recording Act. By this amendment the legislature clearly remedied the inconsistency between the two statutes which had existed from 1876 to 1884, and the effect of this amendment, as held by our Supreme Court in the case of *Murphy v. Valk,* 30 S. C. 262, 9 S. E. 101, was to repeal the Recording Act in so far as it was inconsistent with the Mechanic's Lien Statute. That portion of the opinion of Mr. Justice McGowan in the case above referred to, which relates to this question (beginning at the second paragraph, 30 S. C., on page 267, 9 S. E. 101, and continuing to the end of the opinion), is so clearly reasoned and admirably expressed that I feel myself unable to add anything thereto, and I refrain from quoting the same in *totidem verbis* only lest this decree attain inordinate length.

While it is true that the Mechanic's Lien Statute does not in express terms fix the period when the lien attaches, the implication that such time is the date of the contract is very strong. Section 4115 declares in emphatic language that "such lien shall not avail or be of force against any mortgage actually existing and duly recorded prior to the date of the contract, under which the lien is claimed." The lien arises from the labor performed or material furnished pursuant to an agreement therefor. It has a potential existence from the date of the contract. It would, of course, die a-borning should the contract for labor or materials be never performed, but is vitalized by performance of such contract on the part of him who contributes to the structure or substance of the building. When once so brought into being, its birth is reckoned from the date of contract. It may be from time to time extinguished *pro tanto* by partial pay-

ment, but is reanimated when additional services are rendered or materials furnished, provided they be rendered or furnished pursuant to a continuous contract; and even though there may be time during the progress of the work when payment is made in full to date for such labor or materials, as soon as further work is done or new materials are furnished, pursuant to the original contract, the lien therefor is resuscitated, and is properly held to relate to the date of the contract out of which it sprang. These views, it seems to me, are fully sustained by the opinion of our Supreme Court in the case of *Drewery v. Columbia Amusement Co.,* 87 S. C. 445, 69 S. E. 879, 1094, where it was said: "The lien of the mortgage, however, is subordinate to the claim of the Shand Builders' Supply Company. The master finds that the last item in the account of that company for materials furnished is dated the 22d of May, 1909; the mortgage was executed on the 14th and recorded on the 15th of June, 1909; the said company filed its statement within the time prescribed by statute, and began its action, within the required time, to enforce payment of its lien." What made the mortgage in that case inferior to the lien for materials? It was because the date of the contract for furnishing such materials was prior to the date of the mortgage, and the lien therefor was preserved when the statement of account was filed and recorded as prescribed by law. It is contended by counsel for the trustees that the foregoing decision is not applicable to the case at bar, as the question of the effect of this Recording Act was not argued or decided. But I have already endeavored to show that the sole possible effect of the Recording Act on statutory liens is to extend their validity as against the right of subsequent creditors or purchasers for valuable consideration without notice after the filing of the statements of account, from the time of such filing to the commencement of action for foreclosure, only when such statements of account are recorded in the manner and within the time prescribed by the Record-

ing Act.   The only persons who can in any way be protected or affected by the Recording Act are those who propose to deal with the owner of property immediately after a building has been erected thereon.   If after the expiration of 90 days from the completion of the building, or, to be more exact, 100 days from such date, they find no statements of account and claims or liens against the owner recorded, then they may safely deal with the owner—otherwise they do so at their own peril from the time work is commenced on any such building down to the expiration of the said statutory period after its completion.   Manifestly, the mortgages do not come within the protection of the Recording Act, as they took their mortgage long before the proper time for the several lien claimants to file their statements of account had come.   To hold otherwise would be inconsistent with the clear intention and meaning of sections 4115 and 4117.   It does seem to me that the Drewery case, *supra,* practically decides this case in favor of the said lien claimants whose contracts were entered into prior to the date of the mortgage.

· Much stress has been laid in argument on the fact that the result of this conclusion is to bring laborers and material-men secret liens, which are justly abhorrent to law.   It might have been wiser had the legislature required the contracts under which liens may arise to be executed and recorded in the same manner as deeds and mortgages, even though such a provision might entail a heavy burden on those whom the Mechanic's Lien Statute was designed to protect.   But I confess that I cannot see how such liens are to be regarded as secret liens when they are of statutory origin, and all men are presumed to know the law.   And I find that it is held in many jurisdictions that the·physical fact, so easily apparent to even the casual observer, that a building is in process of construction, is sufficient to put him who deals with the owner of the property on which such

building is being erected on inquiry and to affect him with notice that liens may attach thereto.

It seems that our Mechanic's Lien Statute was copied practically verbatim from the Massachusetts statute, and the conclusions herein reached are in large measure the same held by the highest Court of Massachusetts in construing the portions of their statute which correspond to these here in question. I must content myself with merely giving the following citations: *Carew v. Stubbs,* 155 Mass. 549, 30 N. E. 219; *Batchelder v. Rand,* 117 Mass. 176; *Dunklee v. Crane,* 103 Mass. 470; *Libbey v. Tidden,* 192 Mass. 175, 78 N. E. 313, 7 Ann. Cas. 617.

Cases from other States, decided under statutes similar to ours, which tend to sustain the same conclusion, are: *Ortonville v. Geer,* 93 Minn. 501, 101 N. W. 963, 106 Am. St. Rep. 445; *Vilas v. Mfg. Co.,* 91 Wis. 607, 65 N. W. 488, 30 L. R. A. 778, 51 Am. St. Rep. 925. See, also, 20 A. & E. Ency. (2d Ed.) 476 and 470, and note, and 27 Cyc. 234, and note.

I, therefore, find and hold that under our statutes all persons who come within the purview of the Mechanic's Lien Act, who performed labor or furnished materials under contracts made prior to the date of the mortgage in question, whether such labor was performed, or such materials were furnished, before or after the date of the mortgage, and who have taken the necessary steps, as provided by the Mechanic's Lien Statute, to preserve and enforce their liens, have liens which are prior and superior in rank to the lien of the said mortgage, and are, therefore, entitled to priority in the distribution of the proceeds of the sale of the property of Hotel Melrose, hereinafter ordered to be sold.

It now remains to apply these principles to the determination of the respective rights of the several lien claimants.

The two first contracts were those between H. W. Witcover, the architect, and Hotel Melrose, and J. M. Lawton, the superintendent or contractor, respectively; and, as the

same general objection is made to these two claims, I will first
consider this objection.   As to these claims it is contended by
the trustees under the mortgage that an architect and super-
intendent do not come within the purview of the Mechanic's
Lien Statute, which gives a lien to "any person to whom a
debt is due for labor performed or furnished."   The ques-
tion, therefore, is, what does this language mean, and what
persons are comprehended within its scope?   This question
seems not to have been heretofore adjudicated in South
Carolina, and there is considerable conflict in the decisions
of other States, due, in large measure, to the different pro-
visions of the several statutes, scarcely any two of which are
alike.   In some States the statutes enumerate with minute
particularity the classes of persons thereby protected, but, as
stated in 5 Corpus Juris, p. 266, "a majority of the statutes
do not particularize to a great extent, but describe the per-
sons intended to be benefited in more or less general words,
so that the question whether an architect is entitled to a lien
becomes a matter of statutory construction.   The language
of the statute may be such as to evince a fairly clear intention
to exclude architects from the benefit of a lien; but the stat-
utes usually provide that 'any person' who performs any
work or labor in or about the erection of a building shall be
entitled to a lien, and by the weight of authority such pro-
vision is held to include architects as persons who perform
labor or do work on the building, at least in those cases
where they not only furnish the plans and specifications, but
also superintend the work of construction."   Applying the
rule of common sense and good judgment to our statute,
which certainly is "general" in its terms, and governed by
the trend of legislation and enlightened judicial opinion
towards a liberal construction of similar statutes, to which
all remedial statutes are justly entitled, I am constrained to
find that an architect who furnishes plans and specifications,
and superintends the construction, such as Witcover, and a
superintendent, who devoted practically his entire time to

the construction of the building, who employed and directed all labor, and purchased all materials, such as Lawton, come within the purview of section 4113, and are entitled to liens for their respective services. I cannot give to the word "labor" the narrow meaning contended for by counsel for the trustees, to wit, "manual labor."

One of the leading cases upon this subject, and one of the oldest, which has been cited with approval by the Courts of many States, and affirmed time and again by its own Court, is *Stryker v. Cassidy,* 76 N. Y. 50, 32 Am. Rep. 262. The statute therein construed provided that a lien should exist in favor of "any person who shall perform any labor, or furnish any materials, in building, altering or repairing any house, etc., by virtue of any contract with the owner," etc. The plaintiff was an architect who had prepared the plans and specifications for, and supervised the construction of, the building. The defendant contended that an architect was not entitled to a lien, as the statute was designed to protect only laborers and materialmen. The Court held: This language (*i. e.,* of the statute above quoted) is general and comprehensive, and its natural and plain import includes all persons who perform labor in the construction or reparation of a building, irrespective of the grade of their employment or the particular kind of service. The architect who superintends the construction of a building performs labor as truly as the carpenter who frames it, or the mason who lays the walls, and labor of a most important character. It is not any the less labor, within the general meaning of the word, that it is done by a person who is fitted by a special training and skill for its performance. The language quoted makes no distinction between skilled and unskilled labor, or between mere manual labor and the labor of one who supervises, directs, and applies the labor of others. The plaintiff is within the language of the first section, and his right to a lien must be conceded, unless it appears from other parts of the act, that it was not the intention of the legislature to give

a lien for the kind of labor performed by him. Looking at the whole act, it is plain that it was not passed simply for the protection of laborers, using that word in a restricted sense as designating those who work with their hands, and are dependent upon their daily toil for their subsistence. Mechanic's lien acts are originally enacted for the especial protection of this class of persons, but their scope has been greatly extended. Under the act in question a lien may be created not only in favor of workmen employed by a contractor, but in favor of the contractor also. The lumber dealer, the hardware merchant, in short, any person who supplies materials for the use of the building, may acquire a lien thereon for their value. The right to acquire a lien is not confined to persons who may be supposed to need the especial protection of the State.

"The general principle upon which the lien laws proceed is that any person who has contributed by his labor, or by furnishing materials, to a structure erected by an owner upon his premises, shall have a claim upon the property for his compensation. The dealer who furnishes the paints and oils, the ordinary workman who applies them, or the artist who uses his skill and taste in erecting a mural painting, are alike protected by the act. An architect who makes the plans and supervises the erection of a building is within the words and reason of the law."

One of the latest and best considered opinions on this question is found in the case of *Gould v. McCormick*, 75 Wash. 61, 134 Pac. 676, 47 L. R. A. (N. S.) 765, Ann. Cas. 1915a, 710, wherein many authorities are reviewed and the same conclusion reached as in *Stryker v. Cassidy, supra.* The statute under construction in *Gould v. McCormick, supra*, was as follows: "Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any mining claim, building * * * has a lien upon the same for the labor performed or material furnished." To my mind there seems to be little, if any,

difference between our statute and the statutes under construction in the foregoing cases.

Counsel for the architect and superintendent have cited many cases in support of their views, principal among which are: *Hughes v. Torgerson,* 96 Ala. 346, 11 South. 209, 16 L. R. A. 600, 39 Am. St. Rep. 105; *Knight v. Norris,* 13 Minn. 473 (Gil. 438); *Lamoreaux v. Anderson,* 128 Minn. 261, 150 N. W. 908, L. R. A. 1915d, 204; *Friedlander v. Taintor,* 14 N. D. 393, 104 N. W. 527, 116 Am. St. Rep. 697, 9 Ann. Cas. 96; *Mitchell v. Packard,* 168 Mass. 467, 47 N. E. 113, 60 Am. St. Rep. 404.

The only decision of our own Court cited before me in argument is that of *Isbell v. Dunlap,* 17 S. C. 581, wherein a plantation overseer was denied a lien for his services under the agricultural lien law providing for liens in favor of "laborers working on shares of crop or crops, or for wages in money." Of that decision I approve, but its applicability to the statute now under consideration and to the facts in the case at bar I do not admit. I hold, therefore, that both the architect and superintendent are entitled to the liens which they claim.

The rank of the several liens, with reference to the mortgage, as heretofore indicated, is to be determined according to priority of the dates of the contracts under which they are claimed, and I will now consider in detail each of the said alleged liens in chronological order.

1. *H. W. Witcover.* Date of contract, July 5, 1913. Last services rendered May 10, 1915; statement of account filed and recorded, August 6, 1915; suit for foreclosure begun, September 13, 1915; amount claimed, $1,986.25. There was no written contract. The contract did not state the amount of compensation; hence, Mr. Witcover is entitled to the reasonable worth of his services. He asks for compensation at the rate of 6 per cent. on $58,000, the certified cost of the building, his expenses, and for an additional sum for certain extra services. I find from the testimony

that 5 per cent. is the customary charge for similar services in this community, and I, therefore, reduce this claim by 1 per cent. on $58,000; that is to say, by $580.00. I allow the claim for extra services, as it appears that this charge was made for plans ordered and accepted by Hotel Melrose, but never used, it appearing, further, that this work was done pursuant to an order of Hotel Melrose prior in date to the mortgage. I, therefore, adjudge Mr. Witcover entitled to a lien, paramount to the lien of the mortgage, in the sum of $1,406.25.

2. *J. M. Lawton.* Date of contract, January 7, 1914; date of last item, April 17, 1915; statement of account filed and recorded, July 13, 1915; suit for foreclosure begun, August 31, 1915. It appears from the testimony, especial reference being had to pages 50, 51, that Mr. Lawton performed certain extra services, for which he has charged $250, paid out for labor $140.84, and furnished materials of the value of $107.84, under an independent contract made subsequent to the execution and recording of the mortgage. I reject entirely the following items, as it does not seem to me that they are covered by the contract or statute: Expense trip to Augusta, $15; rent of hoist engine, $120; freight, 62c. I find, therefore, that he is entitled to a lien under his original contract, superior to the lien of the mortgage, to the extent of $267.15; and that he is also entitled to a lien under the independent contract, inferior, however, to the lien of the mortgage, to the extent of $498.68. I regret that I cannot allow this claim in full, as I believe that Mr. Lawton is entitled to every penny in justice and morals. It is admitted that his services were faithful and efficient, and that thereby the cost of the building was measurably lessened. When the credit of Hotel Melrose was exhausted before the completion of the building, he paid for the labor and materials necessary to finish it out of his own funds. But I am bound by the narrow limitations of his contract and of the statute.

3. *Otis Elevator Company.* Date of contract,. January 24, 1914; date of last item, December 15, 1914; statement of account filed and recorded, March 15, 1915; suit for foreclosure begun, June 15, 1915. This claim has not been seriously contested. The amount claimed under the statement of account was $2,150, but it appears from the answer of Hotel Melrose that a credit of $1,000 should be deducted, as that amount was paid to the claimant by Hotel Melrose after the said statement was filed. Hence I find that Otis Elevator Company is entitled to a lien, paramount to the lien of the mortgage, to the extent of $1,150.

4. *The Perkins Manufacturing Company.* Two contracts, one dated February 2, 1914, the other May 19, 1914; dates of two last items, December 30, 1914, and February 17, 1915; statement of account filed and recorded, March 29, 1915; suit for foreclosure begun, June 24, 1915; amount claimed, $2,965.99. The execution of these contracts is admitted, and it is likewise admitted that materials were furnished thereunder to the full extent of the amount claimed, as needed during the progress of the work. I find that these contracts were continuous in character. But it is contended by counsel for the trustees that all of the material which had been furnished up to the date of the mortgage had been paid for at that time, and hence that the claimant should not have a lien superior to the lien of the mortgage for the materials furnished after that date. The testimony shows, however, that all of said materials, whether furnished before or after the date of the mortgage, were furnished in accordance with the terms of, and pursuant to, the said contracts, both of which are prior in date to the date of the mortgage, and, under the law as I have already found it to be, the lien relates to the date of the contract out of which it sprang, and I, therefore, find that the Perkins Manufacturing Company has a lien for the entire balance of its debt, to wit, $2,965.99, prior and superior to the lien of the mortgage.

5. *Bryce & Haynsworth.* Date of contract, April 30, 1914; date of last item, not stated; statement of account filed and recorded, November 6, 1915; amount claimed, $878.65. It is admitted that the said statement of account was filed within 90 days after the last labor was performed and the last materials were furnished, and that suit for foreclosure was begun within the statutory period. I find, therefore, that Bryce & Haynsworth are entitled to a lien, superior in rank to the lien of the mortgage, to the extent of $878.65.

6. *Coggeshall Hardware Company.* Date of contract, August 21, 1914; date of last item, April 9, 1915; statement of account filed and recorded, June 30, 1915. No suit for foreclosure has been begun, but this objection has not been made before me. As the date of this contract is subsequent to the date of the mortgage, and as the amount claimed is not contested, I find that Coggeshall Hardware Company is entitled to a lien, inferior in rank to the lien of the mortgage, to the extent of $192.08, the full amount claimed.

7. *A. J. Royal.* Date of contract, not stated; amount claimed, $203.21. Statement of account was filed and recorded, but no suit for foreclosure was ever instituted, and, as this claimant was not represented by counsel, and took no part in the proceedings after filing his statement. I find that he is not entitled to any lien.

8. *Bostwick-Goodel Company.* This is a claim for $450. It appears that the statement of account was not subscribed and sworn to, as provided by section 4117, and that it was recorded in a chattel mortgage book instead of a builder's lien book. No suit for its enforcement has ever been begun. Hence it cannot be maintained as a lien, and is rejected.

As to the liens claimed by the several lien claimants, except the two last above mentioned, viz., those of A. J. Royal and Bostwick-Goodel Company, no technical objections have been made, and it is admitted that the statements of account complied with the statutory requirements, were duly filed

and recorded in proper time, and that suits for their enforcement were likewise begun in proper time.

The testimony before me is insufficient to enable me to ascertain the amount due under the mortgage; hence it must be referred to Hon. Robert Macfarlan, Judge of probate of Darlington county, to ascertain and compute the amount due thereunder, and also to take testimony and ascertain the amount of a reasonable attorneys' fee for plaintiffs' attorneys. It is admitted that the condition of the mortgage has been broken, and that plaintiffs are entitled to a decree of foreclosure and sale.

It appears that the site of Hotel Melrose consists of two adjacent lots, which front on Orange street, in the aggregate, 144½ feet, and run back in depth 156 feet. The lots are described in the original deeds as running back in depth 161 feet, but upon survey the depth was ascertained to be but 156 feet, as above stated. The mortgage covers only a portion of their property, the lot covered thereby fronting on Orange street 114½ feet, and running back in depth 156 feet. There is, therefore, a lot fronting on Orange street 30 feet, and running back in depth 156 feet, which is not covered by the mortgage, but this is covered by some of the liens. The liens of the following named lien claimants attach to said 30 feet lot as well as to the mortgaged premises: H. W. Witcover, Otis Elevator Company, Bryce & Haynsworth and Coggeshall Hardware Company. The lien of the Perkins Manufacturing Company covers only the mortgaged premises. The lien of J. M. Lawton attaches to only one of the lots of Hotel Melrose, and covers the larger part, but not all, of the mortgaged premises, and 18 feet of the rear end of the said 30-foot lot not embraced in the mortgage. The mortgage embraces portions of both lots of Hotel Melrose, but does not embrace all of either of said lots. A survey and plat of the premises should be made before the sale, and the premises should be sold in three parcels, as the mortgagees have the right to require that such

portion of the hotel property as is covered by certain of the liens, and not covered by the mortgage, be first sold, and the proceeds of such sale applied so far as they may go towards the payment of said liens. For the sake of clearness and convenience, I denominate the lot conveyed to Hotel Melrose by Darlington Central Land Company as the "first" lot, and the lot conveyed to Hotel Melrose by Thad W. Jones as the "second" lot; and I shall denominate as "Lot A" that portion of the "second" lot not embraced in the mortgage and as "Lot B" that portion of the "first" lot not embraced in the mortgage, and as "Lot C" that portion of both the "first" and "second" lots embraced in the mortgage.

It is, therefore, ordered, adjudged and decreed that the rights of the parties to this action and the several other actions heretofore consolidated herewith be and the same are settled according to the findings of fact and law, as hereinbefore set forth; that all of the real property of Hotel Melrose be sold at such time and upon such terms as may be fixed by a further order or decree herein after the coming in of the report of the Judge of probate upon the questions hereinafter referred to him; that the liens and mortgage be foreclosed, and all right and equity of redemption in the said property be forever barred.

It is further ordered, that "Lot A" be sold first, and that the proceeds of such sale be applied, first, to the payment of such proportion of the costs and expenses of this action, exclusive of plaintiffs' attorneys' fees, as the purchase price thereof shall bear to the whole amount of the purchase price of the entire property, and, second, to the liens of H. W. Witcover, Otis Elevator Company, Bryce & Haynsworth and Coggeshall Hardware Company, ratably; that "Lot B" be sold next, and that the proceeds of such sale be applied, first, to the payment of such proportion of the costs and expenses of this action, exclusive of plaintiffs' attorneys' fees, as the purchase price thereof shall bear to the whole

amount of the purchase price of the entire property, and, second, to the balance remaining due, if any, on the liens of H. W. Witcover, Otis Elevator Company, Bryce & Haynsworth, and Coggeshall Hardware Company, and to the lien of J. M. Lawton, ratably; that "Lot C" be sold last, and that the proceeds of such sale be applied, first, to the payment of the balance of the costs and expenses of this action, exclusive of plaintiffs' attorneys' fees; second, to the balance, if any, remaining due on the liens of H. W. Witcover, Otis Elevator Company, Bryce & Haysworth, to the lien of the Perkins Manufacturing Company, and to the balance remaining due, if any, on the lien of J. M. Lawton to the extent that the same is prior in rank to the mortgage, ratably; third, to plaintiffs' attorneys' fees; fourth, to the amount of both principal and interest due under the mortgage; fifth, to the balance remaining due, if any, on the liens of J. M. Lawton and Coggeshall Hardware Company, ratably; and, lastly, the balance of such proceeds of sale, if any, to Hotel Melrose. Payment of the several amounts to be made to the parties hereto or their respective attorneys. The sales are to be made by Hon. Robert Macfarlan, Judge of probate for Darlington county. Any taxes, State, county or municipal, due upon said property to be paid first out of the proceeds of sale, in the same manner as hereinbefore provided as to costs.

It is hereby referred to Hon. Robert Macfarlan, Judge of probate in and for the county and State aforesaid, to take testimony, inquire, and report (1) what amount is due on the mortgage aforesaid; (2) what is a reasonable fee for plaintiffs' attorneys in this action; and (3) what is a proper description of the property in question. To the latter end, he is hereby directed to have a plat or diagram of said premises executed by a competent surveyor, whose fees therefor shall be taxed as a part of the costs of this case, said plat or diagram to show the number and lettering of the lots as hereinbefore indicated.

Upon the coming in of this report, any party to this action shall have leave to apply to me at chambers, or to any Judge presiding in the Fourth Judicial Circuit, in open Court or at his chambers, for such other and further orders as may be necessary to carry into effect the provisions of this decree.

*Messrs. E. O. Woods, George H. Edwards* and *Dargan & Cork,* for appellants.   *Mr. E. O. Woods* cites: *As to the mechanics' lien law:* Code of Laws of 1912, sections 4113 to 4142; Code of Laws of 1912, sec. 3542; S. C. Stats., vol. VI, sec. 32; 12 Am. St. Rep. 663; 1 L. R. A. 77; 27 Cyc. 124.   *As to the alleged lien of Witcover:* 136 N. C. 239; 36 L. R. A. (N. S.) 354; 168 Mass. 467; 60 Am. St. Rep. 405; 17 S. C. 583; 4 Strob. Law 363.   *As to contracts not being continuous:* 59 Am. St. Rep. 281; 2 Jones & S. 443, 455; 43 How. Pr. 389, 393; 23 How. 220; 2 Wall. 1; 73 N. Y. 406, 413.

*Mr. Geo. H. Edwards* cites: *As to mechanics' liens:* Code of Laws (1912), sections 4113, 4115, 3542, 4117.   *As to claim of Witcover, the architect:* 17 S. C. 583; 4 Strob. Law 365.

*Messrs. Dargan & Cork* cite: *As to machanics' liens:* Vol. I of the Code of Laws of South Carolina, sections 4113, 4115, 4117, 3542, *et seq.;* 31 Col. 26; 15 Ill. 189; 26 Ill. 343; 32 Ill. 214; 83 Am. 261; 150 Ind. 684; 62 Mo. 478; 122 Mo. 161; 43 Am. St. Rep. 563; Ann. Cas. 1916b, 634, note; Code of Laws (1912), vol. I, sec. 3543; 82 S. C. 378; 125 Ky. 535; 101 S. W. 942; 87 S. C. 448; 30 S. C. 262. *As to claims of Witcover, architect, and J. M. Lawton, superintendent of construction:* Vol. I of the Code of Laws (1912), section 4113; 17 S. C. 583; Ann. Cas. 1913a; 156 N. C. 239; Ann. Cas. 1913b; 98 Miss. 468; 4 Strob. Law 365.

*Messrs. Hendersons,* for the Perkins Manufacturing Company, defendant-respondent, cite: *As to continuous contracts:* 27th Cyc., p. 148. *As to mechanics' liens:* Code of Laws (1912), vol. I, sections 4113, 4115, 4123; 73 Me. 351; 103 Mass. 670; Ann. Cas. 1916b, 635; 3 Gray 233; 5 Cush. 119; 1 Sprague 277; Code of Laws (1912), vol. I, sec. 4117; 30 S. C. 268-269.

*Messrs. Miller & Lawson,* for J. M. Lawton, respondent and appellant, cite: *As to the right of superintendent of construction to mechanics' lien:* Civil Code (1912), sec. 4113; 27 Cyc. 43; 60 Am. St. 404; 32 Am. Rep. 262; 145 Fed. 458; 26 L. Ed. 704; 66 Fed. 683; 219 Fed. 438; 168 Mass. 465; 47 N. E. 113; 60 Am. St. Rep. 404; 97 Iowa 699; 60 N. W. 880; 107 Wis. 92; 82 N. W. 717; 81 Am. St. Rep. 824; 58 Neb. 685; 79 N. W. 616; 145 Fed. 458; 75 C. C. A. 266; 7 Ann. Cas. 426; 54 Fed. 723; 161 Fed. 241; 88 C. C. A. 277; (C. C.); 66 Fed. 683; 96 Ala. 346; 11 South. 209; 16 L. R. A. 600; 38 Am. St. Rep. 105; 2 Mont. 115. *As to priority of Lawton's lien over mortgage lien:* 27 Cyc. 246; 106 Am. St. Rep. 445; 30 L. R. A. 778; 4 L. R. A., Extra Ann. 669; 53 Am. St. Rep. 790; 51 Am. St. Rep. 779; Code of 1912, sec. 4115; 53 Minn. 316; 99 S. C. 316. *As to priority of whole claim:* 9 Corpus Juris 717; S. C. L. (Bay.) 401; 27 Cyc. 83; 103 Am. St. Rep. 811; 20 Am. & Eng. Ency. of Law 345.

*Mr. B. Wofford Wait,* for H. W. Witcover and Otis Elevator Company, defendants-respondents, cites: *As to lien of architect:* 76 N. Y. 50; 32 Am. Rep. 262; 159 App. 727; 144 N. Y. Supp. 968, overruling 137 N. Y. Supp. 900; 158 App. Div. 549; 143 N. Y. Supp. 838; 128 Minn. 261; L. R. A. 1915d, 204; 75 Wash. 61; Ann. Cas. 1915a, 710; Phillips on Mechanic's Liens (3d Ed.), sec. 153; 96 Ala. 346; 11 So. 209; 38 Am. St. Rep. 105; 16 L. R. A. 600; 13 Minn. 473; 33 Wash. 697; 74 Pac. 829; 97 Ia. 699; 69 N. W.

880; 52 Minn. 522; 54 N. W. 746; 41 Neb. 525; 58 N. W. 800; 26 N. J. Eq. —; 76 N. Y. 50; 32 Am. Rep. 262; 35 Pa. St. 423; 75 Pa. St. 384; 66 Fed. 638; 96 Ala. 346; 38 Am. St. Rep. 105; 16 L. R. A. 600; 156 N. C. 239; 72 S. E. 313; 36 L. R. A. (N. S.) 354; 128 Minn. 261; 150 N. W. 908; L. R. A. 1915d, 204; 14 N. D. 393; 116 Am. St. Rep. 697, and note; 9 Ann. Cas. 96, and annotations; 5 Corpus Juris, secs. 18, 19, pp. 266-7; 12 Bush. 75; 92 Tenn. 305; 36 Am. St. Rep. 85; The Standard Dictionary (Funk & Wagnalls); Webster's New International Dictionary; 2 Bailey 234; 17 S. C. 581; S. C. Stats., vol. XIV, pp. 227 to 229; S. C. Stats., vol. VI, p. 32; S. C. Stats., vol. XIV, pp. 220-225; Civil Code, sec. 4115; Jones on Liens (3d Ed.), vol. II, sec. 1465, and cases cited in note; Jones on Liens, sec. 1389; S. C. Stats., vol. XVI, 92; S. C. Stats., vol. XVIII, 822; Civil Code (1912), sections 4113, 4117 and 4115; 192 Mass. 175; 7 Ann. Cas. 617. *As to the priority of the liens of Witcover and the Otis Elevator Company over the mortgage lien:* Jones on Liens (3d Ed.), secs. 1468-1470, 1480, 1482-3.

March 30, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Appeal from a decree of the Circuit Court, made in an action to foreclose a mortgage on real estate, to which lienees for labor and material are parties defendant. The prime issue before the Court is one of priority betwixt the mortgage lien of the plaintiff for money loaned to erect the house and statutory liens of the defendants for labor performed or furnished and for material furnished and used towards the same end. The Circuit Court concluded that the lien for labor and material was first in right, and that is the chief issue to be decided. The record makes some other minor issues, and they will be hereinafter stated and decided. The

exceptions make the questions we shall decide, but they will not be considered in detail.   They should be reported.

The prime issue above stated involves largely the application of two sections of the Code of Laws to the uncontested facts of the case.   They are sections 4113 and 3542. So to speak, the statute must be laid down on the facts to ascertain how the one conforms to the other.

The plaintiff's mortgage debt of $35,000 was created July 1, 1914.   On that day much of the material for which some of the defendants claim a lien had already been furnished, and much of the labor for which some of the defendants claim a lien had been performed and furnished.   But "statements" of material furnished and labor done were only made out and delivered to the register for record after July 1, 1914.

Lord Westbury declared long ago that "there is not a more fruitful source of error in law than the inaccuracy of language."   It is so in the instant case; the language of two statutes and the amendments to them was so inapt to express a clear intention as to give rise to the present issue.   The statutes are first, that which provides a lien on buildings and lands for parties furnishing labor and material thereon (14 Stats., p. 220 [1869]; section 4113, *et seq.,* Code of Laws) ; and, second, the statute to provide an uniform registry law for all deeds and other instruments in writing required to be recorded (16 Stats., p. 92 [1876] ; section 3542, *et seq.,* Code of Laws).   For brevity and convenience we shall refer to the first as the lien statute and to the second as the registry statute.

As first enacted in 1869, the lien statute was confined strictly to the subject of its title—a lien on buildings and lands for labor and material furnished thereon.   Historically, a half century before that the legislature had made a like provision by statute.   6 Stat. 32.

It is plain that the lien statute of 1869 gave a lien to "any person to whom a *debt* is *due* for labor performed * * * or for materials furnished and actually used * * * by virtue of an agreement," etc.    (Italics supplied.)

There is no need for any construction of or any emphasis upon the word "agreement;" for "it is difficult to understand how a lien can be created unless there be some debt to be secured by it, and to create a debt there must be some contract (agreement), either express or implied." *Geddes v. Bowden,* 19 S. C. 5.

It may, therefore, be assumed, as matter of course, as between the furnisher and the landowner dealing directly with each other, that there can be no lien except there shall first be a contract betwixt him who furnishes and him who receives.    So much assumed then, the statute in such a case plainly and by the express words of it, as betwixt the furnisher and furnishee, gives a lien on a lot and building to the person who furnishes labor or material thereon.    The instant the labor or material is furnished, that instant the lien is created betwixt the two parties to the transaction. *Geddes v. Bowden,* 19 S. C. 5; *Drewery v. Amusement Co.,* 87 S. C. 448, 69 S. E. 879, 1094.

The plaintiffs, then, had a confessed lien, and the defendants also had a lien.    In the absence of a registry statute, that lien which was first in time would of course be first in right.    So reference must now be had to the registry statute as the arbiter of the parties.

The two mentioned statutes at the enactment of each of them moved along parallel lines, to accomplish distinct and differing ends.    The lien statute made no sufficient provision for registry to give notice to other persons, nor did any other statute at that time do so.    Those parts of the lien statute which provided for filing in the clerk's office a "statement" of the amount due the lienee (section 5, act 1869, 14 Stats. 220, and section 4117, Code of Laws) were

on their face intended for part of a procedure to enforce the lien and for no other purpose.

So much of the lien statute (section 4115) as declared that such lien shall not prevail against a mortgage made and recorded prior to the date of the statute lien was intended to protect mortgages already executed and recorded from a possible inference that the statutory lien should take rank against every incumbrance. If that section undertakes to set out a general rule of notice, it is a very insufficient rule and has no relevancy to the facts of the instant controversy.

When the statute of 1869 came to be codified in 1882, the legislature inserted at the end of section 5 the proviso found at the end of section 2354, General Stats. 1882. For convenience we shall refer to that as the amendment of the year 1882. That was the first step towards ingrafting on the lien statute an incongruous provision relevant only to registry statutes. Instead of putting this patch on a garment of like character, which was the registry statute, the legislature put it on a garment of diverse character, which was the lien statute. By amendment of the year 1882 the "statement" had to be delivered to the clerk, and then be recorded within 40 days thereafter, to affect the rights of creditors arising subsequent to the event the statement evidenced. In 1884 the legislature struck out the amendment of the year 1882, and inserted in lieu thereof another amendment, which we shall refer to as the amendment of the year 1884. Let the amendment of the years 1882 and 1884 be reported.

Section 1776 of the Gen. Stats. of the year 1882, referred to in the amendment of the year 1884, is section 3542 of the registry statute of the Code of 1912. The amendment of the year 1884, therefore, instead of prescribing in the lien statute a particular rule of notice, as had the amendment of the year 1882, referred the reader to the registry statute to ascertain rules of notice. The amendment of the year 1884 did not declare what should be the effect of a "delivery" of the "statement" to the register; it merely declared that such

"delivery to the register for filing * * * shall constitute the delivery contemplated" in the registry statute.

So the inquiry is, What "delivery is contemplated" by the registry statute? Irrelevant words omitted, that statute declares: (1) All statutory liens on buildings and lands, for material or labor furnished on them, delivered or executed on or after January 1, 1877, (2) shall be valid, so as to affect, from the time of such delivery or execution, the right of subsequent creditors * * * for valuable consideration without notice, (3) only when recorded within ten days from the time of such delivery or execution in the office of the register. Section 3542, Code of Laws.

The statute meant, of course, all *evidences* of statutory liens, because only such can be delivered and filed and recorded. By the amendment of the year 1882 these evidences were required to be recorded only within 40 days after delivery to the register; but by the registry statute such evidence must be recorded within 10 days from the time of its delivery—that is to say, practically on delivery. The office of the registry statute was, therefore, from the circumstances of the case, to make priorities depend on notice, actual or constructive, and, therefore, for the purpose of constructive notice, to make the recorded statement the evidence of the statute lien.

The registry statute, then, by necessary inference, declares that the statutory lien, good betwixt the contracting parties before any "statement" of it is made in writing, shall not affect mortgage liens acquired by third persons (without notice and for valuable consideration) subsequent to the statutory liens, unless the evidences of the statutory liens had been reduced to a "statement" and recorded before the mortgage liens took effect. The statutory lienee, with no recorded statement, is thus in like plight as a mortgagee who, though his unrecorded lien shall be valid against the mortgagor, yet it shall not be good against another mortgagee of later date, who had no notice of the unrecorded

mortgage. The testimony leaves no room to suggest that the plaintiff had actual notice of the statutory liens.

The appellants cite section 3543 of the Code, and suggest that such section requires that actual notice shall be deemed sufficient to supply constructive notice, only when such actual notice is of the "stated" statutory lien instrument itself, and they say there was no such actual notice. The respondents suggest, in answer, that their contract was not "required by law to be recorded," and, therefore, the cited section has no reference to them. But a "statement" of the statutory lien was required to be recorded, and, therefore, in writing, for purposes of notice. We, however, are of the opinion that the cited section has no relevancy to the case, for the statutory lienees were not "in possession of the real property" in issue.

Attention was called by the respondents to a paragraph in plaintiff's instrument of mortgage which reads thus: "The mortgagor further covenants and agrees that it will not create or suffer any mechanics', laborers', or other similar liens to be created upon said premises whereby the lien of this indenture might or could be impaired until the notes hereby secured, with all accrued interest thereon, shall have been fully paid and satisfied."

And the suggestion was made by the respondents that the mortgage creditors thereby gave evidence that they realized the peril of these statutory liens. We think the paragraph was the child of overcaution alone. Besides that, the mortgagors could not "create" a statutory lien, nor could they prevent the creation of such; the statute gives the lien when others than the mortgagee furnish labor or material on the premises.

The construction of our statutes does not depend upon what other Courts have concluded about the statutes of other States; and we have, therefore, not considered those matters. We are altogether satisfied that the Circuit Court has not announced the law of the case, and its judgment thereabout

3—110.

is reversed.   The mortgage lien of the plaintiff is prior in right to those liens of the defendants.

It is possible that this conclusion renders academic the other issues which were argued, as the property may not bring more than the mortgage debt.   Notwithstanding that reflection, we shall decide the issues made about the right of Witcover, the "architect," and Lawton, the "contractor," to claim a lien at all.   The defendant, Witcover, furnished the plans for the building, and supervised the construction, and the defendant, Lawton, furnished oversight with respect to the purchase of material and the employment of laborers.   For this service they claim such a lien as the statute prescribes.   It is elementary that statutory liens may not be extended by Courts to include the claims of persons not specified by the statute.   He who sets up such a lien must bring himself fairly within the expressed intention of the lawmakers.   The statute, then, is arbiter of the issue.   On this issue the Court decided with the two named defendants, and the mortgage creditors have appealed.   The hotel company has not contested the judgment of the Court.

The appellants say the lien is given only to a person who labors, and the architect and contractor did not labor.   If they did not labor, what word will characterize the service they furnished?   When the architect idealized the structure and put it upon paper, what was his effort if not labor?   When the Master sent out "other seventy" to do his work, he called them laborers.   But a critical examination of the words of the statute reveals that it gives the lien to any person to whom a debt is due for labor performed or *furnished*.   The word "furnished" is not synonymous with performed.   One person may perform labor with his trowel; another may furnish labor with his mind.   It is also manifest from the statute that the lawmakers did not have in mind to protect only the person who works with his hands; the statute gives a like lien to the company which supplies marble man-

tels and tile floors and mahogany newels to the building. We think the case is not concluded by *Isbell v. Dunlap,* 17 S. C. 581. The statute there construed was expressed in language which limited the lien to those "who assist in making the crop" for a price. And it was enacted in the historical setting that in this State crops are tilled by only one class of persons. The decisions in other jurisdictions sustain the views of both the appellants and respondents. On this issue the judgment of the Circuit Court is affirmed.

Some question was made by the plaintiffs and by Mr. Lawton about how much debt Mr. Lawton's lien secured. He claimed $901.45; the Court allowed a prior and preferred lien for $267.15, and a lien second to the mortgages for $498.68, or a total lien debt of $765.83, and disallowed any lien for $135.62. The plaintiffs have not seriously contested the allowance of a lien; the main attack was against its priority.

The Court held that an item of $135.62 was not secured by lien because it was not expended for material or for labor, but for railroad mileage, for the rental of an engine, and for freight. The judgment of the Court thereabout is affirmed.

Our opinion, therefore, is that on the main issue the decree of the Circuit Court is reversed, and on the subsidiary issue the decree is affirmed.

MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. CHIEF JUSTICE GARY. I dissent for the reasons stated in the decree of the Circuit Court.

MR. JUSTICE FRASER disqualified and did not sit.