7282

## METZ v. CRITCHER.

1. EQUITY—MECHANIC'S LIEN—RULES.—A proceeding to enforce a mechanic's lien is not in equity but is statutory, and the statutory provisions for its enforcement should be followed. Rule 28 of Circuit Court is not applicable in such proceeding.

2. APPEAL.—Question not requested to be ruled upon by Circuit Court is not properly before this Court for consideration.

3. MECHANIC'S LIEN—JUDGMENT—VERDICT—DECREE.—Where a proceeding to enforce a mechanic's lien is placed on Calendar 1 and there tried as a law case without objection, the finding of the jury may be accepted as the amount due the petitioner, but judgment should not be entered on the verdict, but the Court by decree should fix the amount due, order a sale of the property and adjust the equities of the parties.

4. IBID.—WORDS AND PHRASES.—The word "owner" used in Code 1902, 3008, in reference to mechanic's liens, is not there used in the same sense as the word is used in section 3011.
   *Divided Court.*

5. IBID.—APPEAL—Exceptions alleging error in refusing nonsuit in proceeding to enforce mechanic's lien are not properly before the Court because the Circuit Court is not shown by the record to have ruled on the question.
   *Divided Court.*
   MR. JUSTICE WOODS *thinks in such proceeding Court should not order nonsuit.*

6. ADDITIONAL GROUNDS on which to sustain a judgment will not be considered when the judgment was erroneously entered.

Before WILSON, J., Barnwell, December, 1908. Reversed.

Proceeding to enforce mechanic's lien by A. B. Metz against W. E. Critcher and W. B. Oswald. From judgment for plaintiff, defendant, Oswald, appeals.

*Messrs. Bates & Simms,* for appellant, cite: *Judgment should not have been entered on verdict:* 12 S. C., 97; 17 S. C., 421; 21 S. C., 392; 35 S. C., 417; 52 S. C., 472. *No privity between Oswald and Metz:* 19 S. C., 5; 16 S. C., 147.

*Mr. Jos. M. Patterson,* contra, cites: *As to docketing:* Code of Proc., 272; Code, 1902, 3025. *Contract and receipts improperly admitted: McElwee* v. *Hutchinson,* 10 S. C.; 9 Cyc., 735 (c).

August 19, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts are thus set out in the record: "This is a proceeding to establish and foreclose a mechanic's lien, in which it was alleged that A. B. Metz, the petitioner, furnished material for the erection of a building. W. E. Critcher, one of the respondents, was the contractor, and the respondent, W. B. Oswald, was the owner of the lot upon which the building was erected. The respondent, W. E. Critcher, made no defense, but W. B. Oswald, the owner, interposed a demurrer, that the petition failed to state a cause of action against him, in that it was not alleged, that notice was given to him in writing or otherwise by the petitioner, before he furnished the material that he would hold him responsible for it. His Honor, George E. Prince, Circuit Judge, heard the demurrer and sustained it by order made March 30, 1908, but in his order, he allowed the petitioner to amend. The petition was duly amended, and served April 2, 1908, by alleging that the material was furnished at the solicitation of W. E. Critcher, a person having authority from, or rightfully acting for, W. B. Oswald, the owner, and that it was furnished to the said W. E. Critcher, with the knowledge and approval of the said owner, W. B. Oswald. The case, from the first, was docketed by the petitioner on Calendar 1, and kept on this Calendar and never docketed on any other. No application was ever made by respondent for an order of reference nor transfer to any other Calendar than No. 1, nor was it ever called to the attention of the Court that there was an error in docketing the case.

"At the December, 1908, term of Court, His Honor, John S. Wilson, presiding Judge, called the case for trial on Calendar 1 without any objection by respondent or his counsel, both being present, and empanelled a jury, and proceeded in the trial of the case, as a law case, and the jury rendered a verdict against the respondents, including the appellant, W. B. Oswald, for the amount prayed for in the petition. No order or decree was made by the Circuit Judge upon the law or facts in the case, or declaring a lien upon the lot and building, and directing a sale of the same in satisfaction of the same, but on motion for a new trial, he made an order in the usual form in jury cases refusing the motion, and the petitioner entered judgment upon the verdict in the usual form, and from this judgment W. B. Oswald appeals. The alleged improper docketing and the claim of the appellant to exclusive equity jurisdiction, was not claimed as grounds in the motion for a new trial."

The first of the exceptions is as follows: "That the action being solely within the jurisdiction of the court of equity, (the same being to establish and foreclose a mechanic's lien), could not be submitted to a jury to decide all the issues of both law and fact, which was done in this case."

The appellant erroneously assumes that the proceedings to foreclose a mechanic's lien are equitable in their nature.

In *Murphy* v. *Valk*, 30 S. C., 262, 267, the Court says: "The law as to the mechanic's lien is purely statutory, and, therefore, in that sense the rights given by it may be called legal; but the act which brought them into existence also provided certain machinery for enforcing them. which in general character, partakes somewhat of the nature of equitable proceedings. The rule in such case is believed to be that in enforcing the rights so given the special machinery provided for that purpose must be strictly followed."

Speaking in a general way of mechanic's liens and others, Mr. Pomeroy, in section 1269, vol. 3, of his work on Equity

Jurisprudence, says: "Many of these liens are enforced by purely legal actions, and their effect resembles that produced by a legal attachment enabling the lienor to retain or recover possession of the thing and to sell it at execution sale under the judgment. Others are enforced by special proceedings authorized and regulated by statute. These two classes have no equitable character and do not come within the scope of equity jurisprudence. In some of the States, however, these liens, especially those charged upon real estate as mechanic's liens, mining liens and the like, are enforced by ordinary equitable actions, resulting in a decree for a sale and distribution of the proceeds, identical in all their features, with suits for the foreclosure of mortgages by judicial sale. It is true, that these liens being created by statute, are legal in their essential nature, rather than equitable; but, so far as they are enforced by equitable actions, they have added a peculiar element to the equity jurisprudence in several States."

In this State, however, mechanic's liens are not enforceable by ordinary equitable actions.

In the case of *Tenney* v. *Water Power Co.,* 67 S. C., 11, 17, 45 S. E., 111, this Court, after discussing a number of authorities, ruled: "That while the plaintiff may maintain an action, under the Code of Procedure, on his contract, 'in like manner as if he had no security for his debt,' the statute affords the only remedy for the enforcement of the lien, and he can not resort to an independent action under the Code for the foreclosure of such lien."

The principle is thus stated in *Johnson* v. *Frazee,* 20 S. C., 500, 502: "The argument of the appellant is that this proceeding is a civil action, and the mode of proceeding therein must be the same as in other civil actions under the Code, except that the statement of the cause of action is presented by petition instead of by complaint. Whether the proceeding is to be styled a civil action or a special proceeding, makes but little difference; whatever it may be, it is governed

by the act which provides it, and not by the Code.    It is a statutory proceeding intended to enforce a specific statutory right, and it is appropriate only where the right is in question.    Its character, nature and mode of procedure, therefore, depend upon the act which affords it."

The second exception is as follows: "That no issues of fact were framed and submitted to the jury by order of the presiding Judge, which should have been done in accordance with Rule 28 of Circuit Court, if the petitioner desired any fact or facts to be passed upon by a jury; but to the contrary, the whole case was submitted to the jury as a law case; and no opinion given by the presiding Judge by way of order or decree upon any of the issues of either the facts or the law, or upon the equities in the case."

As the statute affords the only remedy for the enforcement of a mechanic's lien, Rule 28 of the Circuit Court is inapplicable.

The third exception is as follows: "That the case was docketed only on Calendar 1 as a jury case, when it should have been docketed on Calendar 2, and all the issues of fact and law tried and determined by decree of the Circuit Judge."

His Honor, the presiding Judge, was not requested to rule upon this question; therefore, it is not properly before this Court for consideration.

The fourth exception is as follows: "That the judgment was entered solely upon the verdict of the jury and not upon any order or decree of the Circuit Judge, which was in violation of all approved precedents and practices in equity cases in this State."

Section 3025 of the Code of Laws provides, that "every material question of fact arising in the case shall be submitted to a jury, if required by either party, or deemed proper by the Court; and the trial shall be had upon a question stated or an issue framed, or otherwise, as the Court may order."

This section, unquestionably, conferred upon the Circuit Judge the power to submit the question to the jury whether the appellant was due the petitioner the amount alleged in the petition.

But it did not authorize the entry of judgment on the verdict, nor make the verdict of the jury final as to the amount due under the mechanic's lien. This duty was imposed upon the Court by section 3026 of the Code of Laws, which contains the provision that "the Court shall ascertain and determine the amount due each creditor who has a lien of the kind before mentioned upon the property in question."

Section 3023 of the Code of Laws shows that the entry of judgment upon the verdict is not the remedy provided by the statute. That section is as follows: "If the lien is established in favor of any of the creditors whose claims are presented, the Court shall order a sale of the property to be made by such officer as may be authorized by law to make sales of property."

In the case of *Tenny* v. *Water Power Co.,* 67 S. C., 11, 45 S. E., 111, it was held that a counterclaim could not be interposed by the defendant in a proceeding under the statute to enforce a mechanic's lien.

In the case of *Johnson* v. *Frazee,* 20 S. C., 500, the Court had under consideration the question whether judgment may be given for the excess of the claim in the event that the property fails to pay the debt. The Court, in disposing of that question said, "We think that there was error in so much of the judgment below as allowed the respondent to have execution for any deficiency that might arise after applying the proceeds of sale of the land. The extent of the remedy afforded by the act is to enforce the lien upon the property covered. There is no provision for judgment for the excess, if any be rendered, in the statutory proceeding provided."

The Court assigns the following reason, in the case of *Tenney* v. *Water Power Co.,* 67 S. C., 11, 17, 45 S. E., 111,

why the counterclaim could not be set up: "That as this Court has decided that a plaintiff or petitioner can not, under the statutory proceeding, recover a judgment *in personam,* against the defendant, there is no good reason why a defendant should be allowed to allege a state of facts that would enable him to recover a judgment *in personam* against the plaintiff."

The judgment entered in the case under consideration was in form *in personam,* and any property of the appellant other than that covered by the alleged lien (not subject to homestead) was subject to sale under execution issued thereon. This was not contemplated by the statute as construed by the foregoing decisions. This exception is, therefore, sustained.

The fifth exception is as follows: "That the Circuit Judge erred in instructing the jury that section 3011 of the Civil Code, vol. 1, applied in this case, which provides, in substance, that the owner may prevent the attaching of any lien for labor or material furnished by giving notice, in writing, that he will not be responsible for it, when the action was brought under section 3008, which does not require any such notice, because under this section there must be a contract, either expressed or implied, between the owner and the party who furnishes the labor or material."

Section 3008, of the Code of Laws, is as follows: "Any person to whom a debt is due for labor performed or furnished, or for materials furnished, and actually used in the erection, alteration or repair of any building or structure upon any real estate, by virtue of an agreement with or by consent of the owner of such building or structure, or any person having authority from, or rightfully acting for such owner, in procuring or furnishing such labor or materials, shall have a lien upon such building or structure, and upon the interest of the owner thereof, in the lot of land upon which the same is situated, to secure the payment of the debt so due to him."

Section 3009 simply provides how a sub-contractor may obtain a lien.

Section 3010 declares that the mechanic's lien shall not avail against existing mortgages.

Section 3011 is as follows: "The owner of any such building or structure in process of erection, or being altered or repaired, *other than the party by whom, or in whose behalf, a contract for labor or materials has been made,* may prevent the attaching of any lien for labor thereon, not at the time performed, or materials not than furnished, by giving notice, in writing, to the person performing or furnishing such labor or furnishing such materials that he will not be responsible therefor."

The words which we have italicised show that the owner mentioned in section 3011, is not the same as the one mentioned in section 3008. Section 3011 refers to the owner who has acquired the rights of the owner alluded to in section 3008; and, that section was not intended to be trenched upon in any respect by section 3011.

His Honor, the presiding Judge, therefore, erred in his construction of these sections, and the exception raising this question is sustained.

The remaining exceptions present questions upon which the Circuit Court has not ruled, and are, therefore, not properly before this Court for consideration.

The appellants gave notice that they would ask that the judgment of the Circuit Court be sustained, upon additional grounds.

They, however, can not be considered, as there was no authority for entering the judgment.

It is the judgment of this Court, that the judgment of the Circuit Court be set aside, and that the case be remanded for a trial of the issues framed by the Court, and for such further proceedings as are required by the statute.

MR. CHIEF JUSTICE JONES *concurs in the result.*

Mr. Justice Woods, *concurring:* In this proceeding to foreclose an alleged lien for material furnished for the construction of a house, two issues arise: (1) Was anything due the plaintiff? (2) Was the property subject to a lien in favor of the petitioner on the property, as against the defendant, the owner of the property? The Circuit Judge found the cause on Calendar 1 for trial, and without objection proceeded with the trial before a jury, as if the case were an ordinary jury cause. The jury found a verdict of $324.65 for the plaintiff, and an ordinary money judgment was entered thereon.

I concur in the view of Mr. Justice Gary that the only ultimate relief which the petitioner could have was an order for the sale of the property, as provided in section 3028 of the Civil Code, and that an ordinary money judgment could not be entered on the verdict.

If, however, there had been no error in the charge, the finding of the jury would be a legal finding on "every material question of fact arising in the case" under section 2035. That section provides: "Every material question of fact arising in the case shall be submitted to a jury, if required by either party, or deemed proper by the Court; and the trial shall be had upon a question stated, or an issue framed, or otherwise, as the Court may order. A jury shall be had before a magistrate only as in other civil cases." This means that the method of submitting the material questions of fact to the jury is within the discretion of the Circuit Judge. It was not an abuse of discretion to submit the case to the jury in the method here pursued, especially as the defendant made no objection. Therefore, but for an error in the charge, the proper order of this Court would be that the judgment be set aside, and the cause remanded for the Circuit Court to make its decree in the light of the finding of the jury.

The Circuit Judge charged: "That if Mr. Oswald knew that Metz was furnishing lumber for the erection of the

building on his lot, and desired to prevent Metz from acquiring a lien on the property, he should have given Metz notice that he would not be responsible." The word "owner" is used in the same sense in sections 3008 and 3011, and the two sections are entirely consistent. It is not necessary for the owner of property to give notice under section 3011 that he will not be responsible for the labor or material, unless the labor or material was to be furnished by virtue of his agreement or consent as provided by section 3008. Consent is not implied from mere knowledge. *Gray* v. *Walker*, 16 S. C., 143; *Geddes* v. *Bowden*, 19 S. C., 7.

On the trial of issues before the jury the Court could, in a case like this, direct a verdict for the defendant because of total failure of proof to support the claim; but it could not order a nonsuit. *McClenaghan* v. *McEachern*, 47 S. C., 446, 25 S. E., 296.

Hence there was no error in refusing the motion for nonsuit, and as it seems to me an opinion as to the effect of the evidence would for this reason be premature. I think there should be a new trial of the issues for the error in the charge above indicated.

MR. JUSTICE HYDRICK, *concurring:* I concur in the opinion of Mr. Justice Gary, except in his construction of section 3008 and 3011 of the Code, as to the meaning of the word "owner," found in those sections, and except, also, in his holding that exceptions six and seven present questions upon which the Circuit Court has not ruled, and are, therefore, not properly before this Court for consideration.

I think the word "owner" has the same meaning in both sections, and that the words "other than the party by whom, or in whose behalf, a contract for labor or materials has been made" are used in section 3011 in about the same sense as "unless a contract has been made by him, or in his behalf, for labor or materials." Because if the owner has made a contract for labor or mate-

rials, or if such contract has been made in his behalf by an agent duly authorized, the person with whom such contract was made is entitled, under the terms of section 3008, to a lien without giving any notice of his intention to claim such lien; and notice from the owner, after such contract has been made, that he will not be responsible, will not prevent the attaching of the lien.

The correctness of this construction is made more apparent by reference to section 2 of the original act (14 Stat., 220), which read as follows: "Such lien for materials furnished shall not attach, unless the person furnishing the same, before so doing, gives notice to the owner of the property to be affected by the lien, *if such owner is not the purchaser,* that he intends to claim such lien." (Italics mine). By implication from the use of the words, "if such owner is not the purchaser," and by comparison with the language of section 3008, which immediately preceded as section 1 of the original act, it follows that if the owner is the purchaser, the lien will attach without giving him any notice of intention to claim it. Section 2 of the original act was stricken out by the act of 1896 (22 Stat., 197), and what is now section 3009 substituted for it.

Even where there is no agreement, express or implied, on the part of the owner, or any person having authority from, or rightfully acting for him, I think there may be circumstances under which any person furnishing labor or materials may have a lien, under the statute, as it now reads, on the ground that they were furnished "by consent of the owner, or of some person having authority from one rightfully acting for him, unless the notice required by section 3011 is given." But it will be time enough to decide that point, when a case involving it is presented.

By the terms of section 3009, a sub-contractor is required to give notice of his intention to claim a lien "before performing or furnishing labor or furnishing materials,"

because there is no privity of contract between him and the owner.

The petitioner can not claim a lien under section 3009, because he is not a sub-contractor, in the sense in which that word is used in the statute. He is only a "materialman." But if he were a sub-contractor he could not claim a lien, because he has not given the notice required by the statute.

His right to a lien depends upon whether he has brought his case within the terms of section 3008. To have done so, he must have shown that he furnished the materials "by virtue of an agreement with or by consent of the owner," for it is not contended, and could not be, under the testimony, that Critcher, the person with whom he dealt, had any authority from, or was rightfully acting for the owner, in procuring the materials. Critcher was acting for himself. By the terms of his contract with Oswald, he was to furnish all the materials, and Oswald had no legal right to interfere with him in getting them from whosoever he pleased. Therefore, he can not be said to have "consented" to his getting them from Metz, in the sense in which the word "consent" is used in the statute. *Gray* v. *Walker,* 16 S. C., 147; *Geddes* v. *Bowden,* 19 S. C., 1. There is no testimony tending to show an agreement directly or indirectly, between Metz and Oswald.

All the testimony upon that point is the following, as taken from the record:

A. B. Metz, sworn: "Q. Tell the jury all about this lumber you furnished to Mr. Oswald? A. I furnished lumber for Mr. Oswald's house, in Allendale, by order of Mr. Critcher, the man working there. Q. Well, sir? A. The lumber being ordered by Mr. Critcher and Mr. Oswald, both. The Court: What do you mean? A. Lumber ordered by Mr. Critcher and Mr. Oswald. Mr. Bates objects on the ground that the complaint alleges that the lumber was furnished on the solicitation of Mr. Critcher. Mr. Simms objects to this testimony on the ground that it is a violation of the petition.

The Court sustained objection.  Q. You furnished the lumber?  A. Yes, sir.  Q. When you furnished it, who was it delivered to?  A. Mr. Critcher, for Mr. Oswald's house * * * Q. After you delivered this lumber, what efforts, if any, did you make to get this money?  A. I went to Mr. Critcher, and asked him what about my money, and who was to pay my money, whether he was to pay it, or Mr. Oswald. He says to me to make out a statement for the lumber, and he would get the money for me.  I made out the statement and gave it to him.  In a few days, something like a week— four or five days, or a week—I saw him again, and he told me that Mr. Oswald refused to pay the money over to him, and that I would have to go to him for it.  Q. Did you go? A. Yes, sir, I went to Mr. Oswald; he stayed at the house, he said he was not responsible for my money.  The Court: Says what?  A. I went to Mr. Oswald for the payment of my money, he stayed at his house, built with the material I furnished, he says he was not responsible for the payment of my money.  Q. Did he refuse to pay you?  A. Yes, sir; said Critcher ought to pay it."

Cross-examination: "Q. Mr. Metz, Critcher ordered the lumber?  A. Yes, sir.  Q. You furnished it to him?  A. Yes, sir.  Q. By his order?  A. Yes, sir.  Q. Did you ever make any contract with Mr. Oswald in reference to the lumber?  A. No.  Q. Never did?  A. No.  Q. Mr. Critcher ordered the lumber; you furnished it upon his order and delivered it to Mr. Critcher?  A. Yes, sir.  Q. You charged it on that book against Mr. Critcher?  A. Yes, sir.  Q. And when the money became due you demanded your pay from Mr. Critcher?  A. I asked him what about my money, as he had ordered me to furnish the lumber for Mr. Oswald's house.  Q. You ever have anything to say to Mr. Oswald about it?  A. No.  Q. You ever give Mr. Oswald any notice about furnishing this lumber, and that you expected that he would be responsible for it?  A. No.

J. R. Bennett, one of those who hauled the lumber, testified: "Q. In hauling that lumber, did Mr. Oswald ever have any conversation with you about it? A. Yes, sir. Q. What did he say to you? A. He told me to tell Mr. Metz to send good lumber; to tell him not to send any knotty lumber. Q. Did you tell Mr. Metz? A. Yes, sir."

A. B. Metz, recalled: "Q. You stated that Mr. Oswald also ordered lumber to make his house, this house? A. Yes, sir. Q. Please state how he ordered it? A. He sent his order through Mr. Benett, not to send him any knotty lumber."

It clearly appears from his testimony on cross-examination and from this last testimony of the petitioner, that his testimony, in chief, that the lumber was ordered by Critcher and Oswald, both, was only his conclusion as to the legal effect of what was actually said and done. And it as clearly appears that there was no agreement between him and Oswald, unless the single fact that Oswald told Bennett to tell Metz not to send him any knotty lumber can be construed into an agreement. To do so, would, it seems to me, do violence to the language used, and to all our experience in the dealings of men with each other. That Metz did not so understand and construe it appears clearly from his conduct and his testimony. To put such a construction upon it would prevent any man, who had let a house to be built by contract, from making any objection or suggestion to a materialman, as to the kind of materials being furnished, or to a laborer as to the work being done, without subjecting his property to a lien for his pains. And what is more natural than for the owner of a building in course of erection to do that very thing?

In *Gray* v. *Walker, supra*, Walker, the agent of the owner, called Gray's attention to the plastering off in a room and asked him to replaster it.

While the record shows that a motion for a new trial was made and refused, it does not show the grounds upon which

the motion was based. Therefore the refusal of the Circuit Court to grant the motion is not properly before this Court for consideration. But the record does show that a motion for a nonsuit was made, at the close of the petitioner's testimony, "on the ground that the lumber was furnished at the solicitation of W. E. Critcher, and not at the solicitation of W. B. Oswald," and the sixth exception, while it does not, in so many words, question the correctness of the ruling of the Court on the motion for a nonsuit, does raise the point "that there was no evidence tending to establish any contract, either express or implied, by the owner, W. B. Oswald with the petitioner, A. B. Metz," and the seventh exception makes the point "that the testimony showed that the appellant made only one contract, and that was with the contractor, W. E. Critcher," etc. I think these exceptions are properly before this Court for consideration, in so far as they question the ruling of the Court below that there was some testimony tending to support petitioner's claim for a lien, and I think they should be sustained.

Nevertheless, I concur in the judgment that the case should be remanded to the Circuit Court for such further proceedings as may be necessary, under the statute, for this reason: It does not clearly appear from the testimony whether there was anything left in the hands of Oswald, after deducting from the contract price, the amounts paid by him to Critcher, and the cost of completing the house, according to the contract, after Critcher quit. If there was anything left by the terms of the contract, it would belong to Critcher, and the petitioner should be allowed, under the liberal provisions of the sections of the Code providing for mechanic's liens and for adjusting the rights and equities of all parties in interest, to litigate his right in this proceeding. if he be so advised, to have any surplus in the hands of Oswald, belonging to Critcher, applied to the satisfaction of the debt due him by Critcher. *Geddes* v. *Bowden,* 19 S. C., 1.