## 18812

FULMER BUILDING SUPPLIES, INC., Plaintiff-Respondent, v. Robert C. MARTIN, Patricia G. Martin, Defendants, and National Homes Acceptance Corporation, Defendant-Appellant. The CHASE MANHATTAN BANK *et al.*, Plaintiff, v. Robert C. MARTIN, Patricia G. Martin, and Fulmer Building Supplies, Defendants.

(162 S. E. (2d) 541)

*Messrs. J. Lewis Cromer* and *Herbert W. Louthian,* of Columbia, *for Appellant,*

*Messrs. Pope & Schumpert,* of Newberry, *for Respondent,*

July 24, 1968.

LEWIS, Justice:

This appeal involves the priority between a mechanic's lien and an advance made under a previously recorded mortgage.

Robert C. and Patricia L. Martin employed Security Realty Builders, Inc., as the contractor, to construct a house on a lot owned by them in Newberry, South Carolina; and obtained a loan from National Homes Acceptance Corporation in the amount of $15,400.00 to pay for the construction. The Martins executed a note and mortgage to National Homes in the foregoing amount and the mortgage was duly recorded on the public records on July 11, 1966. Since it was a construction loan, the money was not paid over by National Homes at the time of the execution of the mortgage but was subsequently disbursed in four installments as the work progressed. The first three installments were made by the mortgagee directly to the contractor, on July 21, July 27, and August 3, 1966, leaving a balance of $3,673.16, which was later disbursed on October 3, 1966 as hereinafter shown.

On September 30, 1966, after the first three advancements on the loan were made but before the last, Fulmer Building Supplies, Inc., filed a mechanic's lien on the public records against the Martin property in the amount of $3,771.62, representing the balance due for materials furnished by Fulmer and used by the contractor in the construction of the Martin building. All parties including

National Homes, the mortgagee, were given written notice of the filing of the mechanic's lien by Fulmer.

National Homes, through its attorney, disbursed the remaining part of the loan on October 3, 1966, to several parties as directed by the contractor. Of this balance, eight hundred ($800.00) dollars was paid on the Fulmer mechanic's lien account, leaving a balance due thereon of $2,971.62. The remainder of the loan was applied to other accounts, some of which had no connection with the Martin job. The attorney for National Homes testified that the prior installments had been paid directly to the contractor but that the last one was disbursed through his office to the various creditors, because "National Homes Acceptance Corporation, when they let the last money go, likes to know or be sure that the bills have been paid on the job at that time." He also testified that the payment of only $800.00 was made to Fulmer because he understood from the contractor and an agent of National Homes that Fulmer had agreed to release the mechanic's lien upon the payment of that amount. It subsequently developed, as found by the lower court, that Fulmer had not so agreed.

Since no further payments were made to Fulmer Building Supplies, Inc., an action was instituted to foreclose its mechanic's lien. Thereafter, the Chase Manhattan Bank, as assignee, brought an action to foreclose the mortgage executed by the Martins to National Homes. The lower court consolidated the two actions for trial and referred all issues to a special referee for determination and report. While the mortgage had been assigned to The Chase Manhattan Bank, admittedly such assignment in no way affects the issues to be determined in this appeal.

The basic issue before the lower court, as here, concerned the priority between the mechanic's lien filed by Fulmer Building Supplies, Inc. and the prior recorded mortgage executed by the Martins to National Homes. After a hearing, the special referee found that the mechanic's lien held

a priority over the last advancement made under the mortgage, but that the mortgage was a first lien in so far as the advancements made prior to the filing of the mechanic's lien. He recommended that the property be sold and the proceeds of sale be applied in accordance with his findings. The lower court affirmed the findings of the special referee and adopted his recommendations, from which the mortgagee has appealed. We think that the lower court reached the correct result.

The mortgagee contends that under the provisions of Section 45-55 and 45-257 of the 1962 Code of Laws its mortgage lien has priority to the extent of the principal amount stated therein.

Section 45-55 is as follows:

Any mortgage or other instrument conveying an interest in or creating a lien on any crops, truck, fruits, chattels or real estate, securing existing indebtedness or future advances to be made, regardless of whether such advances are to be made at the option of the lender, shall be valid from the day and hour when recorded so as to affect the rights of subsequent creditors, whether lien creditors or simple contract creditors, or purchasers for valuable consideration without notice to the same extent as if such advances were made as of the date of the execution of such mortgage or other instrument for the total amount of advances made thereunder, together with all other indebtedness and sums secured thereby, the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated therein, plus interest thereon, attorneys' fees and court cost.

Section 45-257 provides that a mechanic's lien "shall not avail or be of force against any mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed."

It is conceded that the present mortgage was executed to secure future advances to the extent of the principal

amount stated in the instrument. It was recorded on July 11, 1966 and, under the foregoing statutes, would ordinarily be valid against subsequent creditors for the amount of the future advances from the date when recorded, to the extent of the principal amount stated in the instrument and "to the same extent as if such advances were made as of the date of the execution of such mortgage."

However, we agree with lower court that, under the present factual situation, Sections 45-55 and 45-257 are ineffective to give the mortgage priority as to the advance made subsequent to the filing of the mechanic's lien.

The owners in this case were constructing the improvements on the their property through a contractor. The statutes provide a lien for labor or materials and the procedure for its perfection, where an owner is making improvements under such arrangement. The lien is created by Section 45-252 of the 1962 Code of Laws. It provides that "every laborer, mechanic, subcontractor or person furnishing material for the improvement of real estate when such improvement has been authorized by the owner shall have a lien thereon, subject to existing liens of which he has actual or constructive notice, to the value of the labor or material so furnished."

Sections 45-254 and 45-259 set forth the procedure for perfection of the lien created by Section 45-252. To enforce it suit must be brought to foreclose within the six months period prescribed by Section 45-262. *Lowndes Hill Realty Co. v. Greenville Concrete Co.,* 229 S. C. 619, 93 S. E. (2d) 885.

Section 45-254 is as follows:

Whenever work is done or material is furnished for the improvement of real estate upon the employment of a contractor or some other person than the owner and such laborer, mechanic, contractor or materialman shall in writing notify the owner of the furnishing of such labor or material

and the amount or value thereof, the lien given by § 45-252 shall attach upon the real estate improved as against the true owner for the amount of the work done or material furnished. But in no event shall the aggregate amount of liens set up hereby exceed the amount due by the owner on the contract price of the improvement made.

Section 45-259 provides that a certificate of lien be served on the owner and filed within ninety days after the person claiming the lien ceases to furnish labor or materials for the building, showing the amount thereof and the property affected.

The mechanic's lien was perfected in accordance with the foregoing statutory requirements. Under Section 45-254, the lien attached upon the property "as against the true owner" to the extent of the balance then owed by the owner to the contractor. *Wood v. Hardy,* 235 S. C. 131, 110 S. E. (2d) 157. The balance owed by the owner to the contractor at the time of the attachment of the mechanic's lien in this case was the sum of $3,673.16.

Under the terms of Section 45-255, any person claiming a mechanic's lien who shall have given notice in accordance with the foregoing statutory provisions "shall be entitled to be paid in preference to the contractor at whose instance the labor was performed or material furnished and no payment by the owner to the contractor thereafter shall operate to lessen the amount recoverable by the person so giving the notice."

The foregoing section clearly made the holder of the mechanic's lien in this case entitled to be paid by the owner in preference to the contractor to the extent of the balance due by the owner to the contractor, that is, to the extent of the balance of $3,673.16. However, instead of so applying the remaining funds due the contractor, only $800.00 of the balance was so applied, with most of the remainder, in effect, being paid to the contractor, leaving a balance due on the mechanic's lien of $2,971.62.

When the mechanic's lien was filed, the balance of the funds due the contractor was in the hands of the mortgagee. The purposes for which the mortgagee made the loan available had been met and the mortgagee was therefore obligated to pay over the remaining funds. These funds were not paid to the owner, but were disbursed by the mortgagee as directed by the contractor, with no showing of any authority from the owner to the mortgagee for so doing. In so far as this record shows, the mortgagee exercised complete authority in the disbursement of the proceeds of the construction loan.

When the mortgagee assumed absolute control of the disbursement of the proceeds of the construction loan, it occupied the same position as the owner with respect to the duties and obligations imposed by statute as to the payment of the remaining funds after the perfection of the mechanic's lien. The failure, under such circumstances, of the mortgagee to protect the mechanic's lien to the extent of the funds remaining in its hands gave the mechanic's lien priority over the mortgage lien to the extent of the subsequent advance.

The construction funds held by the mortgagee were funds belonging to the owner to be applied in accordance with the owner's obligations incurred in the construction of the building. The mortgagee had notice that these funds could not be lawfully paid by the owner to the contractor and that the holder of the mechanic's lien held a preference. Yet the mortgagee paid most of the funds over as the contractor directed and they were not applied to the payment of the mechanic's lien. Sections 45-55 and 45-257 were not designed to afford a shield to protect such disbursement of construction funds by a mortgagee. If such were sanctioned, the payment of the recorded liens of laborers and materialmen could in many instances be circumvented by the simple device of disbursing the funds through the mortgagee who holds a prior recorded mortgage.

Under the particular facts of this case, the lower court correctly held that the mechanic's lien had priority over the lien of the prior recorded mortgage to the extent of the advance made by the mortgagee subsequent to the filing of the mechanic's lien.

Affirmed.

Moss, C. J., and Bussey, Brailsford, and Littlejohn, JJ., concur.