20333

CENTRAL PRODUCTION CREDIT ASSOCIATION, Appellant, v.
Charles W. PAGE et al., Respondents,

(231 S. E. (2d) 210)

2

*J. Reese Daniel, Esq.,* of Columbia, *for Appellant,*

*Messrs. Theodore W. Law, Jr.,* and *Davis and Brandon,* of Columbia, *for Respondents,*

January 3, 1977.

LITTLEJOHN, Justice:

The issue in this case is the viability and validity of a mortgage given to secure present indebtedness, as well as future advances, as permitted by § 45-55 of the Code of Laws of South Carolina (1962). We refer to it as an "open-end" mortgage.

The relevant facts out of which the controversy arises are as follows:

On September 7, 1973, defendant Charles W. Page gave to the plaintiff, Central Production Credit Association (C. P. C.) a note representing an indebtedness of $3,860.00, secured by an open-end mortgage on his house and lot in Eastover. His wife, defendant Brenda Law Page, renounced dower on the mortgage. It was recorded September 13, 1973. The mortgage provided security for a maximum loan of $25,000.00 and contemplated future advances.

On October 24, 1973, while the $3,860.00 debt was outstanding, Charles Page deeded the mortgaged house and lot to his wife, Brenda Law Page, without consideration.

On February 22, 1974, the entire debt of $3,860.00 was satisfied. The note was marked "paid" and returned to Charles W. Page, the borrower; the mortgage was retained

by C. P. C., the lender, and remained of record, obviously by mutual consent to secure future advances.

Thereafter, Charles Page applied for and was granted a loan in the amount of $16,245.00 by C. P. C. He executed a note for that amount on February 28, 1974, and his wife, Brenda Law Page, endorsed it.

To secure the $16,245.00 loan, Charles W. Page agreed to sign a mortgage covering his one-half interest in a 217 acre tract of land. There remained of record the open-end mortgage of September 7, 1973; by its terms it also provided security for the new loan.

After the $16,245.00 loan was approved, but before disbursement was made, C. P. C. learned that Charles Page had conveyed, to his wife Brenda, the house and lot over which it held the open-end mortgage. As a condition of disbursing the $16,245.00 (and apparently to avoid the possibility of legal complications), C. P. C. required Brenda to sign a mortgage on the house and lot as security for the loan. This she did on March 5, 1974, and the proceeds of the loan were thereafter disbursed on March 14, 1974. Simultaneously (March 5), Charles Page signed a mortgage covering the 217 acre tract as additional security. The original open-end mortgage dated September 7, 1973, remained of record.

Thereafter, Brenda, who it developed was a minor (20 years old), successfully repudiated her mortgage of March 5, 1974, on the house and lot. The mortgage was signed before the Constitutional Amendment, making all persons 18 years of age and upward *sui juris,* was ratified on February 6, 1975.

Charles Page defaulted in his payments, and C. P. C. instituted this action to collect the debt and to foreclose both the open-end morgage of September 7, 1973, on the house and lot, and the mortgage of March 5, 1974, covering the 217 acre tract. The validity of the open-end mortgage was made the important issue.

The case was first tried before the master in equity, who ruled that the open-end mortgage of September 7, 1973, was valid security for the note of February 28, 1974. Exceptions were taken to the master's report and the trial judge rejected the recommendations of the master, holding that at the moment the $3,860.00 debt was fully paid, on February 22, 1974, the open-end mortgage was no longer viable. In addition, the judge held that C. P. C. was estopped to assert the open-end mortgage because it had taken a mortgage on the same property from Brenda Law Page; this is the mortgage she repudiated because of her minority.

Code § 45-55 reads as follows:

*"Mortgage for future advances.*—Any mortgage or other instrument conveying an interest in or creating a lien on any crops, truck, fruits, chattels or real estate, securing existing indebtedness or future advances to be made, regardless of whether such advances are to be made at the option of the lender, shall be valid from the day and hour when recorded so as to effect the rights of subsequent creditors, whether lien creditors or simple contract creditors, or purchasers for valuable consideration without notice to the same extent as if such advances were made as of the date of the execution of such mortgage or other instrument for the total amount of advances made thereunder, together with all other indebtedness and sums secured thereby, the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated therein, plus interest thereon, attorneys' fees and court cost."

The relevant portion of the open-end mortgage provides:

"In consideration of advances made and which may be made by Central Production Credit Association, Lender, to Charles W. Page, Borrower, (whether one or more), aggregating Three Thousand Eight Hundred Sixty and No/100 Dollars ($3,860.00), (evidence by note[s] of even date herewith, hereby expressly made a part hereof) and to se-

cure, in accordance with Section 45-55, Code of Laws of South Carolina, 1962, (1) all existing indebtedness of Borrower to Lender (including but not limited to the above described advances), evidenced by promissory notes, and all renewals and extensions thereof, (2) all future advances that may subsequently be made to Borrower by Lender, to be evidenced by promissory notes, and all renewals and extensions thereof, and (3) all other indebtedness of Borrower to Lender, now due or to become due or hereafter contracted, the maximum principal amount of all existing indebtedness, future advances, and all other indebtedness outstanding at any one time not to exceed Twenty-Five Thousand and No/100 Dollars ($25,000.00), plus interest thereon, attorneys' fees and court costs, with interest as provided in said note(s), and costs including a reasonable attorney's fee of not less than ten (10%) percentum of the total amount due thereon and charges as provided in said note(s) and herein, Undersigned has granted, bargained, sold, conveyed and mortgaged and by these presents does hereby, grant, bargain, sell, convey and mortgage, in fee simple unto Lender, its successors and assigns: [here legal description for house and lot].

\* \* \*

"It is understood and agreed that all advances heretofore, now and hereafter made by Lender to Borrower, and all indebtedness now and hereafter owed by Borrower to Lender, and any other present or future indebtedness or liability of Borrower to Lender, whether as principal debtor, surety, guarantor, endorser or otherwise, will be secured by this instrument until it is satisfied of record. It is further understood and agreed that Lender, at the written request of Borrower, will satisfy this mortgage whenever: (1) Borrower owes no indebtedness to Lender, (2) Borrower has no liability to Lender, and (3) Lender has not agreed to make any further advance or advances to Borrower."

On this appeal by C. P. C., there are two questions for this Court to answer:

1. Did the trial judge err in holding that an open-end mortgage, given in compliance with § 45-55 of the Code, is no longer viable when there is no debt or balance outstanding for the mortgage to secure?

2. Did the trial judge err in holding that the taking of the mortgage from Brenda Law Page estops C. P. C. from enforcing the original mortgage of September 7, 1973, covering the same property?

The construction of the statute has been before the Court on one other occasion. *McMillen Feed Mills, Inc., of S. C. v. Mayer,* 265 S. C. 500, 220 S. E. (2d) 221 (1975). The precise question stated as number 1 above was not answered in that case. We adopted the "relation back" theory, ruling that when an advance is made it relates back to the date and hour of recording of the original mortgage, taking priority over other subsequent liens or encumbrances given before advances are made, and therefore being binding on the subsequent creditors. Section 45-55 classifies purchasers with lien holders and creditors. It makes no distinction between purchasers and lien holders. Accordingly, a note executed by Charles Page to C. P. C. after the deed to Brenda Page on October 24, 1973, is secured by the open-end mortgage notwithstanding the deed.

Mortgages to secure future advances serve a socially and economically desirable purpose. They expedite many transactions, typical of which are construction and improvement loans with installments to be advanced as the work progresses, mortgages by way of indemnity for prospective endorsements, guarantees and accumulations of commercial papers to be issued by the mortgagor, and fluctuating current balances under lines of credit established with the mortgagee. The advantages of such arrangement, in which the borrower wants only a part of the loan to

begin with but will need more in the future, are numerous and substantial. The mortgagor saves interest on the surplus until ready to use it. He also avoids the expense and inconvenience of refinancing the mortgage so as to include the additional needed sum, or, in the alternative, of executing a second and later mortgage for each new advance, with the attendant expenses. No doubt these are some of the considerations the General Assembly had in mind when it enacted the statute. The statute clearly sanctions the right of parties to give and to accept open-end mortgages to secure future advances. There is nothing express or implied, in the statute to infer that it was the intent of the legislature that the mortgage be dead once there is no debt momentarily existing. The statute permits the parties to agree that the mortgage live on until the mortgagor requests its cancellation. Code § 45-61 provides for such cancellation. In addition, the parties in the mortgage (as quoted hereinabove) have expressly agreed that the mortgage live on until canceled of record. A holding that an open-end mortgage dies when there is currently no debt for it to secure, would severely limit its beneficial use and defeat the legislative intent. As long as the mortgage is of record, any subsequent lien holder or purchaser takes with notice of the impact of the Code section.

We hold that after the initial debt was fully paid on February 22, 1974, the mortgage did not die; it remained of record, dormant but viable, to secure the payment of additional notes given by Charles Page, including the note of February 28, 1974.

We now reach the second question and determine whether C. P. C. should be estopped to assert its open-end mortgage of September 7, 1973. The gravamen of the Pages' position on this point (and apparently the position taken by the trial judge) is that when Brenda Page signed her own mortgage on the house and lot (though an invalid mortgage), C. P. C. relinquished its right to

claim through the original mortgage. In other words, the Pages submit that an invalid mortgage substituted for a valid one. It would hardly be argued that a mortgage could be extinguished by payment made with a bad check; by a similar token, a good mortgage cannot be extinguished by giving an invalid one.

We are of the opinion that the doctrine of estoppel is not available to the Pages. An essential element of the defense of actionable estoppel is a material prejudice to the party asserting the defense, resulting from an act of neglect of the party against whom it is asserted. Actionable estoppel is raised on appropriate facts to prevent an injustice to the party invoking the doctrine, not to penalize or punish the other for an act or omission which has not resulted in harm to his adversary. In *Frady v. Smith*, 247 S. C. 353, 147 S. E. (2d) 412 (1966), we recited the elements of estoppel as follows:

"The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially."

There is a total lack of evidence to the effect that the Pages relied on any representations, acts, nonacts or silence of the appellant, or were misled in any way to change their position by reason of such.

Counsel for the Pages argues that there was no reason to require the mortgage of Brenda if the open-end mortgage was still effective to secure the debt of February 28, 1974. At the time the mortgage was required, our Code Section 45-55 had not been interpreted. *McMillen, supra,* was filed November 25, 1975. No doubt her mortgage was required out of an abundance of precaution, with the realization that she might assert that her title was superior to the open-end mortgage. C. P. C.'s requirement is understandable. No lender wants to buy a lawsuit. The fact that Mr. Brown of C. P. C. testified that he would have canceled, upon request by the borrower, the open-end mortgage when the first note was paid on February 22, 1974, is of no consequence. There being no debt at the moment, C. P. C. would have had no alternative. When there was no debt and no commitment for a loan, both the law and the terms of the mortgage required a cancellation upon request.

It was clearly the intent of both Charles and Brenda Page that C. P. C. have a lien on the house and lot covered by the open-end mortgage. This is evidenced by Brenda's signing of a new mortgage and by the fact that the parties allowed the original open-end mortgage to remain of record. The Pages have suffered no prejudice by the action of C. P. C.

Reversed.

NESS, RHODES and GREGORY, JJ., concur.

LEWIS, C. J., concurs in result.