1344

Bobby GLOVER, Respondent v. Harriett LEWIS, a/k/a Harriett W. Odom, American Savings and Loan Association, and Sanders Supply Company, Inc., Defendants, of whom American Savings and Loan Association is Appellant. Appeal of AMERICAN SAVINGS AND LOAN ASSOCIATION.

(382 S. E. (2d) 242)

Court of Appeals

*Susanne A. Hawkins* and *Louis H. Lang,* both of *Callison, Tighe, Robinson & Anastasion,* Columbia, *for appellant.*

*W. D. Rhoad,* Bamberg, *for respondent.*

Heard April 19, 1989.

Decided May 30, 1989.

CURETON, Judge:

The basic issue presented in this mechanic's lien foreclosure action is the kind of notice required to defeat the priority of a mortgage lien recorded subsequent to the accrual of an unrecorded mechanic's lien. The trial court held

the notice sufficient to defeat the priority of the mortgage lien. The mortgagee appeals. We reverse.

The foreclosure of a mechanic's lien being a proceeding for the enforcement of a statutory lien is legal in nature. *Adams v. B & D, Inc.*, 377 S. E. (2d) 315 (S. C. 1989); *Metz v. Critcher*, 83 S. C. 396, 65 S. E. 394 (1909); *Karl Sitte Plumbing Co., Inc. v. Darby Development Co. of Columbia, Inc.*, 295 S. C. 70, 367 S. E. (2d) 162 (Ct. App. 1988). In a law case, this court will not disturb the trial judge's findings of fact unless found to be unsupported by the evidence. *Southeastern PVC Pipe, Mfg., Inc. v. Rothrock Constr. Co., Inc.*, 280 S. C. 498, 313 S. E. (2d) 50 (Ct. App. 1984). We review the facts against this standard.

In February 1985 Respondent Bobby Glover entered into a contract with homeowner, Harriet Lewis, to remodel her home. Glover began the remodeling job in March 1985 and prosecuted the job through October 1985. Materials for the job were obtained from Sanders Supply Company, Inc.

On May 28, 1985, Lewis mortgaged her home to Appellant American Savings and Loan Association's predecessor to secure the payment of a $25,000 loan. American recorded the mortgage on May 30, 1985.

On June 7, 1985, Sanders Supply filed a $25,088 mechanic's lien for materials furnished.[1] Thereafter, on December 23, 1985, Glover filed a mechanic's lien in the amount of $25,313 for labor provided the job.

Glover brought this action in March 1986 to foreclose his lien and sought priority of his mechanic's lien over American's mortgage lien. The case was referred to a special referee. At a hearing on the claim, Glover testified that after completing 50 to 60 percent of the job Lewis agreed to pay him and Sanders Supply some amount on "her bill." He further testified he drove Lewis to a mortgage company and waited while she completed loan paperwork. He testified a man subsequently came to the property and took pictures when the job was about 75 percent complete, but he did not talk to the man. Glover also testified a second man came to

---

[1] This lien was dissolved because of Sanders' failure to timely prosecute enforcement procedures.

the job site when the job was about 80 to 85 percent complete and asked him when the job would be completed.

Dave Clayton, a Sanders Supply representative, testified he talked to American several times. He claims he initially called American during the summer of 1985 and was assured Lewis had applied for a loan. Clayton also recalled receiving a phone call from American when Lewis requested the lender call him "to assure [him] the check would be made jointly to Sanders Supply Company and to [Lewis]." He could not recall discussing with American the amount then due for outstanding materials.

Clayton recounted that in about his second conversation with American he was told the appraiser had been to the job, but the work had not progressed enough to "make the appraisal they wanted, and that [the appraiser] was going to have to return." He maintained the conversation must have included a discussion of the work in progress.

The special referee found Glover's lien took priority over American's mortgage even though the mortgage had been recorded first because "American had actual notice through its inspections and discussions of the work with Dave Clayton" and thus American cannot claim the protection of Section 30-7-10 of the recording statute.

On appeal, American argues the evidence is insufficient to show it had actual notice of Glover's claim. American asserts that neither the Clayton conversations nor the inspections provided actual notice of Glover's lien. The lender also contends it could not have had notice of Glover's lien when it filed its mortgage because the conversations between Clayton and American and the inspections occurred after the filing of its mortgage. It also argues the notice required to defeat its priority is *actual notice* of Glover's unrecorded mechanic's lien or his right to a lien, not just notice of the construction in progress. It reasons that since Glover's right to a lien is conditioned upon a debt due from Lewis to him, effective notice must include not only the fact that goods and materials were provided but also the fact that they had not been paid for.

> A person who performs labor or furnishes materials in the erection, alteration, or repair of a structure or building and to whom a debt is due for such labor or

materials is entitled, as security for payment of the debt, to a mechanic's lien against the property on which the building or structure is situated. *Shelley Constr. Co. Inc. v. Sea Garden Homes, Inc.*, 287 S. C. 24, 336 S. E. (2d) 488 (Ct. App. 1985); Section 29-5-10, Code of Laws of South Carolina, 1976, as amended.

In the noted case of *Williamson v. Hotel Melrose*, 110 S. C. 1, 96 S. E. 407 (1918), our Supreme Court considered the interrelationship between the mechanic's lien statute and the recording statute. The court concluded that as between a mechanic and a third party mortgage lienor priority is to be determined by reference to the recording statute. *Williamson* states:

> The registry [recording] statute [now Section 30-7-10 of the Code], then by necessary inference, declares that the statutory lien, good betwixt the contracting parties before any "statement" of it is made in writing, shall not affect mortgage liens acquired by third persons (without notice and for valuable consideration) subsequent to the statutory liens, unless the evidences of the statutory liens had been reduced to a "statement" and recorded before the mortgage liens took effect. The statutory lienee, with no recorded statement, is thus in like plight as a mortgagee who, though his unrecorded lien shall be good against the mortgagor, yet it shall not be good against another mortgagee of later date, who had no notice of the unrecorded mortgage.

110 S. C. at 32, 96 S. E. at 415.

Under the logic of *Williamson*, American must therefore have recorded its lien without notice of any unrecorded lien of Glover in order to claim the protection of the recording statute. *See also Willard v. Finch*, 123 S. C. 56, 116 S. E. 96 (1923). The question then is whether there is any evidence reasonably supporting the referee's finding that American had notice of Glover's mechanic's lien when its mortgage lien took effect. Glover argues that, at a minimum, American had inquiry notice of his unrecorded lien or right to a lien when it recorded its mortgage.

American recorded its mortgage in May 1985. According to Clayton's testimony, his first conversation with American occurred during the summer of 1985. It is

common knowledge that the summer season began on June 21, 1985. See 1985 *World Almanac and Book of Facts* 732. Thus, this conversation must have occurred after the recordation of American's mortgage. The subsequent conversations Clayton had with American and the inspections allegedly performed by American must also have occurred after May 1985. Glover's testimony is that a man (presumably an appraiser) first came to the job site when the job was about 75 percent complete and took pictures. He also testified that another man from a lender came to the job site when it was about 80 to 85 percent complete.[2] This evidence is insufficient as a matter of law to show American had either actual or inquiry notice of Glover's lien or right to a lien when it recorded its mortgage in May 1985.[3]

Another question raised in this appeal is whether or not American's mortgage, regardless of the fact that it appears on its face to secure contemporaneous advancement of funds, did in fact secure funds advanced subsequent to the execution of the mortgage. Although we find no South Carolina case on point, the weight of authority appears to be that there is no fundamental distinction (as to legal effect) between mortgages which on their face show they are intended to secure future advances and those which are regular on their face, securing a stated sum, but which have been executed and recorded pursuant to an arrangement that the secured funds will be advanced in installments. *Annot.* 80 A. L. R. (2d) 179, 186 (1961). The reasonable inferences to be drawn from the evidence show that while American's mortgage was recorded in May 1985, disbursements thereunder were made after the house was substantially completed.[4]

Even if we were to conclude that American had notice of Glover's mechanic's lien before it disbursed funds, such notice would not afford Glover's mechanic's lien

---

[2] Glover testified he commenced work in March 1985 and stopped in October 1985. He further testified he performed substantially the same amount of work each month during this eight month period. If that is the case, the job would have been 75 percent complete around August 1985.

[3] Where there is evidence sufficient to put a mortgagee on inquiry as to an unrecorded lien, the mortgagee is chargeable, as a matter of law, with actual notice of such facts as could have been ascertained by proper inquiry. *Willard v. Finch,* 123 S. C. 56, 116 S. E. 96 (1923); *See Kirton v. Howard,* 137 S. C. 11, 134 S. E. 859 (1926) (*bona fide* purchaser for value without notice).

[4] The record does not reflect when disbursement was made but the inferences are that they occurred before November 1985.

priority over the disbursements. Under the precedent of *Fulmer Building Supplies, Inc. v. Martin*, 251 S. C. 353, 162 S. E. (2d) 541 (1968), advances made by American subsequent to the execution of its mortgage would generally be afforded the same priority against subsequent creditors as advances made contemporaneous with the execution of the mortgage. This priority is generally afforded by virtue of Sections 29-3-50 and 29-5-70. *Id.* at 357, 162 S. E. (2d) at 543. In *McMillen Feed Mills, Inc. of South Carolina v. Mayer*, 265 S. C. 500, 220 S. E. (2d) 221 (1975), the court rejected a junior mortgagee's contention that a senior mortgagee's notice of a subsequent lien of the junior mortgagee affected the priority of advances made by the senior mortgagee under a future advance clause after the junior mortgagee perfected its lien. *Central Production Credit Ass'n. v. Page*, 268 S. C. 1, 231 S. E. (2d) 210 (1977), reaffirms *McMillen* that a future advance clause relates back to the date and hour of recording of the original mortgage.

In conclusion, we hold there is no evidence of record that at the time American perfected its mortgage lien, it had actual or inquiry notice of Glover's mechanic's lien. Additionally, we hold Glover's lien is not entitled to priority over monies advanced by American to Lewis under the terms of its mortgage after American received actual or inquiry notice of Glover's lien because such disbursements are accorded priority under Section 29-3-50, Code of Laws of South Carolina, 1976.[5]

Accordingly, the order of the special referee is reversed.

Reversed.

GARDNER and GOOLSBY, JJ., concur.

---

[5] Act No. 635, 1988 *S. C. Acts* 5150, effective June 7, 1988, amended Section 29-3-50 to provide that a person furnishing labor, services, or material may gain priority of his mechanic's lien over subsequent future advances made pursuant to a previously recorded mortgage by filing his notice of mechanic's lien and serving the notice on the prior recorded mortgage holder.