In re FINEVEST FOODS, INC., et al., Debtors.

LAND–O–SUN DAIRIES, INC., Plaintiff,

v.

WILLIAMS ENVIRONMENTAL SERVICES, INC., d/b/a Harmon Environmental Services, Inc., Defendant.

Bankruptcy Nos. 91–614–BKC–3P1 to 91–619–BKC–3P1. Adv. No. 93–123.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 28, 1994.

Raymond Magley, Jacksonville, FL, for debtor.

John B. Macdonald, Jacksonville, FL, S. Gregory Joy, Atlanta, GA, for Williams Environmental.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding seeking to determine the validity, priority and extent of lien came before the Court for trial on August 26, 1993. On May 13, 1993, this Court entered an order consolidating this adversary proceeding with plaintiff's objections to claim 3469, amended by claims 3778 and 3779, for all purposes. Accordingly,` the adversary proceeding and objections to claims are considered jointly. Upon the stipulation of facts of the parties, pleadings and evidence, the

Court enters these findings of fact and conclusions of law:

*Stipulated Findings of Fact of the Parties* [1]

Plaintiff, Land–O–Sun Dairies, Inc., and defendant, Williams Environmental Services, Inc., for the purpose of the above-styled bankruptcy cases and adversary proceeding, stipulate to the following:

1. Plaintiff owns a dairy product distribution facility in Columbia, Richland County, South Carolina (the "Property").

2. Defendant is an environmental contractor engaged in the business of performing environmental remediation services.

3. The Property is approximately five acres. There are two buildings on the Property. One building contains an office and warehouse space, and the other is used as a vehicle maintenance garage.

4. On March 9, 1990, plaintiff and defendant entered into a contract by which defendant agreed to, and did, remove from the Property six underground storage tanks contained in four separate underground tank pits designated Pits 1, 2, 3 and 4. Plaintiff has paid defendant in full for all services performed under this contract.

5. After the removal of the tanks, defendant determined that there was contamination in the surrounding soil in three of the four tank pits and possible contamination of the underground water on the Property.

6. On January 10, 1991, plaintiff and defendant entered into another contract (the "Contract") by which defendant agreed to conduct further soil testing and remediate the contaminated soil on the Property in and around Pits 1, 2, 3 and 4. A copy of the Contract is attached hereto as exhibit A [2]. A portion of Pit 4 is located under a corner of the office and warehouse building. Pit 3 is located adjacent to another corner of the office and administration building. Pit 2 is located adjacent to the maintenance building, and Pit 1 is located in the area of a gas pump service island. Subsequently, under the Contract, defendant installed wells for the purpose of sampling and testing ground water and sampled and tested the groundwater. (Plaintiff has paid defendant in full for the installation of these wells.) Plaintiff agreed to pay defendant for that portion of the work not paid for by the South Carolina Department of Health and Environmental Control.

7. On February 11, 1991 (the "Petition Date"), plaintiff filed its Chapter 11 petition in this Court.

8. On October 16, 1991, defendant filed in the office of the Clerk of the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, and the Official Records of Richland County, South Carolina, a Notice and Certificate of Mechanic's Lien with a verified Statement of Account for work completed and amounts due as of July 19, 1991. This Notice and Certificate of Mechanic's Lien and the Statement of Account were served on plaintiff's registered agent in South Carolina on October 15, 1991. A certified copy of the Notice and Certificate of Mechanic's Lien and Statement of Account, and a certified copy of the Affidavit of Service for that Notice and Certificate of Mechanic's Lien and Statement of Account are attached hereto as Exhibit B.

9. On January 17, 1992, defendant filed a Petition for Foreclosure of Mechanic's Lien with the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, for amounts due under the Contract for work performed by defendant up to and including July 19, 1991. This Petition and the Summons were served on plaintiff's registered agent in South Carolina on January 17, 1992. A certified copy of the Petition and Summons and a certified copy of the Affidavit of Service for that Petition for Foreclosure of Mechanic's Lien and Summons are attached hereto as Exhibit C.

10. On January 9, 1992, defendant filed in the United States Bankruptcy Court for the Middle District of Florida a Notice, a copy of which is attached hereto as Exhibit D, pursuant to 11 U.S.C. § 546(b) of the filing of

---

**1.** Errors in sentence structure or style are left as submitted by the parties and are not corrected by the Court.

**2.** The stipulation of the parties is reproduced here verbatim, however, no exhibits are attached to these findings of fact and conclusions of law.

defendant's Notice and Certificate of Mechanic's Lien filed in Richland County, South Carolina, on October 16, 1991. This Notice pursuant to 11 U.S.C. § 546(b) was served on plaintiff's counsel by defendant's counsel on January 9, 1992.

11. Defendant filed Notices of Lis Pendens in the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, and the Official Records of Richland County, South Carolina, on January 13, 1992. These Notices of Lis Pendens were filed and served on plaintiff's registered agent in South Carolina on January 13, 1992. Certified copies of these Notices of Lis Pendens and certified copies of the Affidavits of Service for those Notices of Lis Pendens are attached hereto as Exhibits E and F.

12. On May 27, 1992, this Court entered an Order confirming plaintiff's plan of reorganization subject to defendant being permitted to maintain its claims for a secured interest and an administrative priority concerning the work performed by defendant on the Property.

13. On June 24, 1992, defendant filed in the Office of the Clerk of the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, a second Notice and Certificate of Mechanic's Lien with a verified Statement of Account for the amounts due defendant under the Contract as of March 27, 1992, the date defendant completed its obligations on the Property under the Contract. This Notice and the Statement of Account were served on plaintiff's registered agent in South Carolina on June 24, 1992. A certified copy of the Notice and Certificate and Mechanic's Lien and Statement of Account and a certified copy of the Affidavit of Service for that Notice and Certificate of Mechanic's Lien and Statement of Account are attached hereto as Exhibit G.

14. On September 22, 1992, defendant filed a Petition for Foreclosure of Mechanic's Lien with the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, for amounts due under the Contract as of March 27, 1992, the date defendant completed its work on the Property under the Contract. This Petition and the Summons were served on plaintiff's regis-

tered agent in South Carolina on September 22, 1992. A certified copy of the Petition and Summons and a certified copy of the Affidavit of Service for that Petition and Summons are attached hereto as Exhibit H.

15. On September 22, 1992, defendant filed in the United States District Court for the Middle District of Florida, Jacksonville Division, a Notice, a copy of which is attached hereto as Exhibit I, pursuant to 11 U.S.C. § 546(b) of the filing of defendant's Notice and Certificate of Mechanic's Lien filed in Richland County, South Carolina, on June 24, 1992. This Notice pursuant to 11 U.S.C. § 546(b) was served on plaintiff's counsel by defendant's counsel on September 22, 1992.

16. Defendant filed another Notice of Lis Pendens in the Court of Common Pleas of the Fifth Judicial Circuit in Richland County, South Carolina, and the Official Records of Richland County, South Carolina, on September 22, 1992. This Notice of Lis Pendens was served on plaintiff's registered agent in South Carolina on September 22, 1992. A certified copy of the Notice of Lis Pendens is attached hereto as Exhibit J. The Affidavit of Service for that Notice of Lis Pendens is found at the page of Exhibit H attached hereto.

17. Defendant has filed a second amended proof of claim in plaintiff's Chapter 11 case asserting a (i) secured claim in the amount of $247,552.78 based upon an alleged mechanic's lien on the Property for the services rendered pursuant to the Contract, (ii) an administrative expense claim in the amount of $49,201.05 for services rendered under the Contract after the Petition Date, and (iii) an unsecured claim in the amount of $115,809.93 for services unrelated to the Contract. Plaintiff has filed an objection to this claim.

18. Defendant has filed a third amended proof of claim in plaintiff's Chapter 11 case asserting a (i) secured claim in the amount of $225,775.13 based upon an alleged mechanic's lien on Property for the services rendered pursuant to the Contract, (ii) an administrative expense claim in the amount of $60,574.34 for services rendered under the Con-

tract after the Petition Date and (iii) an unsecured claim in the amount of $116,509.96 for services unrelated to the Contract. Plaintiff objects to this claim to the extent not stipulated to in Paragraph 19 below of these stipulations.

19. Plaintiff agrees that it owes defendant a total of $225,775.13 for defendant's work on the Property under the Contract. Defendant remains unpaid for excavation of soil for the four pits on the Property, the testing of soil in the pits on the Property, the burning of soil removed from the four pits to remove petroleum constituents, the testing of soil removed from the four pits, and the replacement and backfilling into the four pits of successfully cleaned soil originally removed from the four pits. In addition, when defendant removed the underground tank contained in Pit 4, a portion of the building fell into the pit. Defendant removed the debris from the building contained in the pit. $11,576.14 of the $225,775.13 due defendant is for debris removed from the pit. Of the amount of $225,775.13, $60,574.34 is for services rendered under the Contract after the Petition Date. Plaintiff agrees that defendant is entitled to an administrative priority claim in the amount of $60,574.34 for post-petition work for which Williams is entitled to be paid.

Of the $225,775.13, Williams is owed $208,-792.13 for the mobilization of the thermal processing unit and the burning of the soil (burned at $60.00 per ton for 3,746.29 tons), $144.77 for soil borings to test the soil, $1,862.60 for testing soil in the pits and soil removed from the pits, $158.79 for excavation of soil from the pits, $943.33 for replacement and backfilling of the soil, and $2,297.37 for equipment rental for soil excavation and backfilling and $11,576.14 for removal of debris from the building that fell into one of the pits. Of the $165,200.79 owed to defendant for pre-petition work, $161,198.81 is owed for the mobilization of the thermal processing unit and the burning of soil, $144.77 is owed for soil borings to test the soil, $1,470.66 is owed for testing soil in the pits and soil removed from the pits, $158.79 is owed for excavation of soil from the pits, $642.39 is owed for equipment rental for soil excavation

and backfilling, and $1,585.37 is owed for removal of debris from the building that fell into one of the pits.

20. Plaintiff agrees that defendant is entitled to an unsecured claim in plaintiff's Chapter 11 case in the amount of $116,509.96 for work performed by defendant for plaintiff unrelated to the Contract.

21. Attached as Exhibits K–1 through K–8 are copies of additional documents which are authentic and admissible into evidence.

### Additional Fact Findings of the Court

Consistent with South Carolina environmental regulations, defendant prepared a corrective action plan for the Property and arranged to bill the State Underground Petroleum Environmental Response Bank Fund ("Superb Fund") directly for a portion of the cost. S.C.CODE ANN. § 44–2–10 et seq. Defendant reported successful remediation of the soil in its March 4, 1991, Project Report on the Thermal Treatment of Petroleum–Contaminated soils presented to the South Carolina Department of Health and Environmental Control. The cleanup was limited to thermal treatment of the soil and $270,653.66 was billed to Superb Fund.

### Conclusions of Law

### Validity of Lien

Debtor challenges defendant's entitlement to a mechanic's lien for the portion of its claim resulting from excavation for testing, remediation, and filling of soil and removal of debris from the pit on debtor's property. Debtor argues that because this work was unconnected with the erection, alteration or repair of buildings or structures it is not lienable labor and defendant is not entitled to a mechanic's lien and its claim is unsecured.

Claimant counters that it is entitled to a mechanic's lien under both § 29–5–10 and § 29–5–20 of the South Carolina Code and argues that grading, excavation, treatment of excavated soil and filling are expressly made lienable by § 29–5–10.

■ Section 29–5–10 defines a mechanic's lien while § 29–5–20 applies the lien to debts owed subcontractors and others. *Hardin*

*Const. Group v. Carlisle Const.,* 300 S.C. 456, 388 S.E.2d 794 (S.C.1990). Thus the threshold question the Court must answer is whether the work provided by defendant is included within the definition of § 29–5–10. If the work is not within that definition, the Court need not answer the other issues raised by the parties.

 A South Carolina court states the purpose of the mechanic's lien statute is:

[t]o aid both builders and owners. It enables a builder to supply labor and materials with the assurance of being paid without the necessity of a conventional note and mortgage. Simultaneously, it provides the owner with an easy method of obtaining credit while receiving the benefit of labor and materials supplies to his property.

*A.V.A. Const. v. Santee Wando Const.,* 303 S.C. 333, 400 S.E.2d 498 (Ct.App.1990). In accordance with its remedial purpose, the South Carolina courts have given the mechanic's lien statute a liberal construction but, because the lien is purely statutory, a court may not extend the statute to create liens that are not specified by the statute. *Clo–Car Trucking Co., Inc. v. Clifflure Estates of South Carolina, Inc.,* 282 S.C. 573, 320 S.E.2d 51, 53 (Ct.App.1984) quoting *Guignard Brick Works v. Gantt,* 251 S.C. 29, 159 S.E.2d 850 (1968). The party claiming a lien must "bring himself fairly within the expressed intention of the lawmakers." *Clo–Car,* 320 S.E.2d at 53 quoting *Williamson v. Hotel Melrose,* 110 S.C. 1, 96 S.E. 407, 415 (1918).

Accordingly, this Court begins its analysis with the language of the statute. Section 29–5–10 states in relevant part:

(a) A person to whom a debt is due for labor performed or furnished or for materials furnished and actually used in the erection, alteration, or repair of a building or structure upon real estate or the boring in and equipping of wells, by virtue of an agreement with, or by consent of, the owner of the building or structure or a person having authority from or rightfully acting for, the owner in procuring or furnishing the labor or materials shall have a lien upon the building or structure and upon

the interest of the owner of the building or structure in the lot of land upon which it is situated to secure the payment of the debt due to him.... As used in this section, labor performed or furnished in erection, alteration or repair of any building or structure upon any real estate includes the preparation of plans, specifications, and design drawings and the work of making the real estate suitable as a site for the building or structure. The work is considered to include but not be limited to, the grading, bulldozing, leveling excavating, and filling of land (including the furnishing of fill soil), the grading and paving of curbs and sidewalks and all asphalt paving, the construction of ditches and other drainage facilities, and the laying of pipes and conduits for water, gas, electric, sewage, and drainage purposes....

S.C.CODE ANN. § 29–5–10. In defining lienable labor and materials, the statute ties the lien to the erection, alteration, or repair of a building or structure. In the first sentence of the statute, a lien is created for labor and materials furnished and actually used in the erection, alteration or repair of a building or structure. Then the statute broadens the scope of lienable labor and materials by creating a lien for the preparation of a site for the purpose of erection, alteration or repair of a building or structure. Clearly, the statute requires a connection between furnishing of labor or materials and the erection, alteration or repair of a building or structure to create a mechanic's lien.

### South Carolina Precedent

 In implementing this statutory requirement, the South Carolina courts have required that the erection, alteration or repair of a building or structure at least be contemplated in order to create a mechanic's lien. In *Clo–Car Trucking Co., Inc. v. Clifflure Estates of South Carolina,* the court of appeals held that the labor used to clear and grate land for streets and roads in two undeveloped subdivisions was not lienable. The court held that "[a] mechanic's lien cannot attach to land or an owner's interest in land where the work done is unconnected with and forms no integral part of the erection

alteration, or repair of either a building or structure of some description." *Id.,* 320 S.E.2d at 54. The court ruled that grading and clearing could not be a building or structure, and consequently plaintiff was not entitled to a mechanic's lien for the grading and clearing for streets.

The court of appeals again addressed the mechanic's lien statute in *A.V.A. Const. v. Santee Wando Const.* In *A.V.A.,* plaintiff sought to foreclose a mechanic's lien for the debt owed for constructing a tennis court, paved roads, gutters, and drainage facilities in a 43 acre, 87 lot development. The Court noted the tendency of the General Assembly to liberalize the mechanic's lien statute and the purpose of the remedial statute in holding that the work was lienable. The Court said that, "[t]he statute [is] sufficiently broad to encompass labor and materials for curbs, gutters, streets, a tennis court, and drainage facilities absolutely essential to the owner's development of his properties." *Id.,* 400 S.E.2d at 500. The court noted that in *Clo–Car* "[t]here is no allegation in the Complaint that the clearing and grading were done in connection with the construction or erection of any building or structure upon the land other than 'streets and roads,' which as we gather from the record were never built." and held that the trial court erred in failing to distinguish *A.V.A.* from *Clo–Car* on this basis. *Id.*

Similarly, in *Johnson v. Barnhill,* 279 S.C. 242, 306 S.E.2d 216 (1983) the Supreme Court of South Carolina rejected plaintiff's argument that surveying and laying out lots, bridal paths and drainage ditches on undeveloped land is essential to beginning construction and to making the real estate suitable as a site for a building or structure. The court held that the cases relied upon by plaintiff involved the "[a]ctual construction of the buildings on the property and are thus distinguished from the present case where no labor was performed in making an improvement which became a part of the real estate." *Id.,* 306 S.E.2d at 218.

### Application

Defendant argues that the test for determining whether labor is lienable is "[w]heth-er the work performed by the contractor was provided in order to make all lots usable for building structures." From this starting point, defendant argues that because the property was contaminated and violated both South Carolina and federal environmental laws the Property could not be used without the soil remediation and because of this, defendant's work is lienable.

The Court cannot agree that the work done on debtor's property is lienable. The South Carolina courts have consistently required a connection between the labor furnished and the erection, alteration or repair of a building or structure in order for a mechanic's lien to arise. In *A.V.A.* the court relied upon this very point to distinguish *Clo–Car,* and in *Johnson* the court rejected plaintiff's argument because of the distinction between work connected to construction and work unconnected with construction.

In this case, as in *Clo–Car,* neither the contract between debtor and defendant, the claims, the lien notices, the lis pendens notices nor the § 546(b) notices contemplate any construction on the Property. Defendant agreed only to test and remediate the soil; no erection, alteration, or repair of any structure was contemplated and none occurred. In reliance on the remedial nature of the lien statute and the *A.V.A.* court's reliance on the statutory purpose of § 29–5–10, defendant asks this Court to extend South Carolina mechanic's lien law to its work which is beyond the parameters for mechanic's liens recognized by the South Carolina courts. The Court is unwilling to extend the law to that extent.

■ In addition, even if the test for lienable labor is as defendant suggests "whether the labor makes the property usable," it is unclear whether debtor's property was unusable. No sanctions were imposed and, arguably, if only monetary remedies were imposed, even though the fines were expensive, the fines would not preclude the use of the Property. Consequently, the threat of injunctive remedies and large fines is not sufficient to support the argument that the land was not usable.

Defendant next argues that the removal of the tanks and the subsequent cleanup was a continuing process of alteration. Defendant argues that the tanks are structures and the clean up is inexorably linked to the removal and that this process amounts to alteration of the tanks. While the Court agrees that the tanks are structures, the Court does not find this argument persuasive because removal is not alteration. Other courts which have addressed the question whether removal is lienable labor have held that it is not. *See,* 53 Am.Jur.2d Mechanic's Liens § 84 (1970).

The Court holds that defendant's work in testing and remediating the soil on debtor's property was not connected with the erection, alteration or repair of any building or structure and is not lienable pursuant to South Carolina mechanic's lien law.

### Objections of Claims

Defendant filed claim 3469 on February 5, 1992. Debtor objected to the amount and secured status of this claim on September 9, 1993. Defendant amended claim 3469 with claims 3778 filed June 14, 1993, and claim 3779 filed November 5, 1993. Pursuant to the stipulation of the parties, debtor objected to each of these claims. As stipulated, the parties have resolved objection to the amount of the claim, and debtor objects to claim 3779 only to the extent that defendant asserts a mechanic's lien.

Pursuant to the Joint Motion to Consolidate, the objection to claim and adversary proceeding and this Court's Order granting that motion, the determination of the extent, validity and priority of lien resolves debtor's objection to claim. For the reasons previously stated, the Court holds that defendant, Williams Environmental, has an unsecured claim in the amount of $165,200.79 for the work performed on debtor's property.

### Conclusion

The work done on debtor's property was not in any way connected with the erection, alteration or repair of structures. Consequently, the Court holds that the work is not lienable pursuant to South Carolina Code § 29-5-10, and the claim is unsecured. De-

fendant, Williams Environmental, is entitled to an unsecured claim in the amount of $281,710.74. This claim is comprised of $165,200.79, which was allegedly secured by a mechanic's lien which the Court holds is invalid, and $116,509.95 which the parties stipulated is an unsecured claim. Defendant also has an administrative claim in the amount of $60,574.34 as stipulated by the parties. The Court will enter a separate order and judgment consistent with these findings of fact and conclusions of law.